[No. 20739. In Bank. — December 17, 1890.]

Ex parte BENJAMIN HODGES, on HABEAS CORPUS.

EXTERMINATION OF WILD ANIMALS — POWER OF SUPERVISORS — CONSTRUCTION OF COUNTY GOVERNMENT ACT. — The power conferred by the County Government Act upon boards of supervisors to provide for the destruction of gophers, squirrels, and other wild animals, noxious weeds, and insects, etc., should be upheld in all cases, where the means employed are reasonable, and not otherwise objectionable, but cannot be extended so far as to require a land-owner, under a penalty, to exterminate wild animals of which he is not the owner, and over which he cannot in the nature of things have any control or dominion.

ID. — DESTRUCTION OF GROUND-SQUIRRELS — UNREASONABLE ORDINANCE — MISDEMEANOR — HABEAS CORPUS. — An ordinance requiring all occupants of lands, within ninety days, to exterminate and destroy the ground-squirrels on their respective lands, and thereafter to keep said lands free and clear therefrom, and declaring the violation of the ordinance to be a misdemeanor, is unreasonable and burdensome, and one convicted of a violation thereof is entitled to a discharge on *habeas corpus*.

ID. — POLICE AND SANITARY REGULATIONS — CONSTITUTIONAL LAW. — The ordinance is not a police, sanitary, or similar regulation, and is not authorized by section 2 of article 11 of the state constitution, providing for the enforcement by counties of police, sanitary, or other regulations not in conflict with general laws.

ID. — POLICE POWER — CONSTRUCTION OF CONSTITUTION. — Under section 2 of article 11 of the state constitution, providing for the making and en-

forcing "of all such local, police, sanitary, and other regulations as are not in conflict with the general laws," "other regulations" must be limited to objects similar to those denominated police and sanitary.

APPLICATION to the Supreme Court for a discharge on a writ of *habeas corpus.* The facts are stated in the opinion of the court.

*Latimer & Brown,* for Petitioner

*W. S. Tinning,* for Respondent.

WORKS, J. — This is an application for a writ of *habeas corpus.* The board of supervisors of Contra Costa County enacted the following ordinance:—

"An ordinance to provide for the extermination and destruction of ground-squirrels in the county of Contra Costa.

"The board of supervisors of the county of Contra Costa do ordain as follows: —

"Sec. 1.    Ground-squirrels infesting lands in the county of Contra Costa are hereby declared to be a public nuisance.

"Sec. 2.    All owners and occupants of lands within the county of Contra Costa are hereby required, within ninety days after the taking effect of this ordinance, to exterminate and destroy the ground-squirrels on their respective lands, and thereafter to keep said lands free and clear therefrom.

"Sec. 3.    Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor.

"Sec. 4.    This ordinance shall take effect and be in force on the thirtieth day of November, 1889."

The petitioner was convicted of a violation of this ordinance, sentenced to pay a fine, and in default of payment, was committed to the county jail. He now prosecutes this proceeding, and asks that he be discharged.

The question as to the constitutionality of the ordinance is gravely and learnedly discussed by counsel on both sides, and Cooley's Constitutional Limitations, Potter's Dwarris on Construction of Statutes, Sedgwick on Constitutional Law, and other constitutional authorities, and decided cases innumerable, are cited in aid of and against its validity. It is certainly a most effective means of abating a nuisance, viz., the squirrels, and bringing about a very desirable end. We regret exceedingly that we cannot see our way clear to uphold and enforce such an important and original piece of legislation. Indeed, it would give us great pleasure to see the power here assumed applied to snakes, tarantulas, ants, flies, fleas, and other reptiles, insects, and pests, which tend to make man's life a burden, and to have it exercised and enforced in every county in the state. But we are unable to see by what right or authority of law a board of supervisors can impose upon a land-owner the burden and expense of exterminating animals *feræ naturæ* on his own land, or elsewhere. It is true, the County Government Act, section 25, subdivision 28, gives boards of supervisors power to " provide for the destruction of gophers, *squirrels*, other wild animals, noxious weeds, and insects injurious to fruit-trees or vines, or vegetable or plant life," and this is a power that should be upheld in all cases, where the means employed are reasonable, and not otherwise objectionable. But certainly this authority cannot be so far extended as to require a land-owner, under a penalty, to exterminate wild animals of which he is not the owner, and over which he cannot, in the nature of things, have any control or dominion. From our limited knowledge of the nature of the squirrel tribe in this state, such a task would seem to us to be almost, if not quite, impossible.

The ordinance requires that all occupants of lands, *within ninety days*, exterminate and destroy the ground-

squirrels on their respective lands, and *thereafter to keep said lands free and clear therefrom.* This might be successfully done by the free and judicious use of poison, and perhaps by some other means, on very small tracts of land, but on large tracts it would certainly require eternal vigilance, if it could be accomplished at all, and if, after the extermination of the intruders on his own lands, one, only one, should come over from the land of his neighbor, the ordinance would be violated. The occupant of lands bordering on another county, where no such regulation prevailed, and the pesky squirrel was allowed to propogate and grow unmolested, would be in a most unfortunate condition. Such an ordinance differs materially from laws requiring an occupant of lands to keep them free from noxious weeds, or such as make it the duty of an owner of diseased domestic animals to kill them, in order to prevent the spread of the disease. These are matters over which the property owner has control, and the requirements are reasonable and just.

The respondent attempts to sustain the ordinance by and under section 2 of article 11 of the constitution of this state, which provides that "any county, city, town, or township may make and enforce, within its limits, all such local, police, sanitary, and other regulations as are not in conflict with the general laws." But the ordinance is not intended to preserve the peace and quiet of the county, or to prevent the use of one's property to the injury of another, or for the protection of the lives, limbs, or comfort of all persons, or to prevent the propagation or spread of disease, nor is it in any proper sense a police or sanitary regulation. What is meant by "other regulations," in the section cited, may be a question, but it must certainly be limited to objects similar to those denominated police and sanitary. If the board of supervisors had no authority to pass such an ordinance, then no offense was committed by the petitioner, the act or omission on his part was not a crime, the court had no

jurisdiction to try or convict him, and he is entitled to
his discharge.

We know of no law which can be held to authorize a
board of supervisors to enact such an ordinance, and we
are quite clear that it cannot be enforced, for the reason
that it is unreasonable and burdensome in the extreme.

Let the petitioner be discharged.

Fox, J., Sharpstein, J., and Thornton, J., concurred.

Paterson, J., and McFarland, J., concurred in the
judgment.