[S. F. No. 3801. In Bank.—December 31, 1904.]

## PAUL J. DENNINGER, Petitioner, v. RECORDER'S COURT OF CITY OF POMONA, Respondent.

MUNICIPAL CORPORATIONS—ORDINANCE REGULATING GAS-RATES—MISDEMEANOR—CONSTITUTIONAL LAW—MUNICIPAL CORPORATION ACT.—A municipal ordinance passed by a municipal corporation of the fifth class, regulating gas-rates and establishing a maximum rate, and declaring it a misdemeanor to collect or receive more, is constitutional and valid. If it is not authorized by the grant of police power made in section 11 of article XI of the constitution, it is authorized by section 19 of article XI of the constitution, empowering municipal corporations to fix gas-rates for persons or companies laying pipes therein, construed in connection with the Municipal Incorporation Act, providing for ordinances and empowering cities of the fifth class to impose fines, penalties, and forfeitures for the violation of ordinances.

ID.—CONSTRUCTION OF CONSTITUTION—MANDATE UPON LEGISLATURE.—
Whatever may be the interpretation of section 33 of article IV of
the constitution, laying a mandate upon the legislature to regulate
charges for services performed and commodities furnished by tele-
graph and gas corporations, the failure of the legislature to act
under that section will not render nugatory the right granted by
section 19 of article XI thereof to municipal corporations, re-
enforced by a prescribed method for its exercise, and by so much
legislation as is absolutely necessary to supply its deficiencies.

ID.—PUNISHMENT FOR MISDEMEANOR—POWER OF LEGISLATURE—REASON-
ABLE FINE.—Whatever the legislature may punish as a misdemeanor
it may authorize a municipal corporation to punish as a misde-
meanor. A fine of three hundred dollars for violation of an ordi-
nance fixing a maximum rate for gas is not unreasonable.

ID.—COLLECTION FOR CORPORATION—OPERATION OF ORDINANCE.—Where
the ordinance by its terms applies to any person who collects or
receives more than the maximum rate for gas, the fact that the
defendant convicted of misdemeanor was collecting as agent for a
corporation cannot render the complaint for misdemeanor insuf-
ficient. The corporation must act through the agency of natural
persons, to whom the ordinance applies.

ID.—WRIT OF REVIEW—JURISDICTION OF RECORDER'S COURT.—If a com-
plaint under a municipal ordinance should fail to allege facts
constituting one of the offenses to which the jurisdiction of the
recorder's court is confined, a judgment of conviction may be
reviewed and annulled upon *certiorari;* but where it appears that
it has jurisdiction over the offense charged, its judgment must be
affirmed.

CERTIORARI to review a judgment of the Recorder's
Court of the City of Pomona. John H. Lee, Recorder.

The facts are stated in the opinion of the court.

Herbert Cutler Brown, and Garret W. McEnerney, for
Petitioner.

Robert G. Loucks, City Attorney, for Respondent.

BEATTY, C. J.—The petitioner was convicted in the re-
corder's court of collecting from a resident of Pomona more
than one dollar and fifty cents per thousand feet for gas,
contrary to the provisions of a municipal ordinance es-
tablishing that as the maximum rate, and declaring it a
misdemeanor to collect or receive more. He seeks in this
proceeding, by *certiorari,* a review of the judgment of fine

and imprisonment, and the sole question to be determined is whether the recorder's court exceeded its jurisdiction.

Pomona is a city of the fifth class, and the recorder's court in cities of that class has a jurisdiction in criminal cases strictly limited in character (Stats. 1883, p. 265), so that if the complaint upon which a defendant is arrested and tried fails to allege facts constituting one of the offenses to which its jurisdiction is confined, a judgment of conviction may be reviewed and annulled upon *certiorari*, or, in case of actual imprisonment, upon *habeas corpus*.

The petitioner contends that the complaint upon which he was arrested and tried charges no offense,—first, because the municipality has no power to limit gas-rates by ordinance; and second, because even if it has the power to establish a maximum rate it has no power to make the violation of such an ordinance a misdemeanor, punishable by fine or imprisonment. Upon these two propositions the argument has taken a very wide range, but to them it has been confined. Whatever question may have arisen at any stage of the proceedings as to the sufficiency of the complaint to state a case within the penal clauses of the ordinance, no such question has been raised here, and we shall therefore confine ourselves to a consideration of the two propositions above stated.

Regarding both propositions, it is contended by the respondent that in the absence of any other statutory or constitutional grant of power every provision of the ordinance is fully supported by section 11 of article XI of the constitution, which reads as follows: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." By this section the people have made a direct constitutional grant of the police power of the state to every municipal corporation for local purposes. It is conceded by the petitioner that the general grant of legislative power in the constitution of a state includes the power to regulate gas-rates by statute, and that this power may be delegated by statute to municipal corporations. If this is so, and if the regulation of gas-rates by the state is an exercise of the police power, it would be difficult to say why, in the absence of more specific provisions in our constitution relating to this matter, the municipal corporations of the state could

not by virtue of the section above quoted adopt and enforce
within their local limits ordinances as comprehensive, both as
to the establishment of rates and the infliction of penalties,
as the statutes which the legislature is competent to enact
for the state at large.

But these are questions which we do not find it necessary
to decide. The constitution contains specific provisions re-
lating to the matter of limiting the charges for gas furnished
to cities and their inhabitants, provisions which in and by
themselves furnish a complete answer to the petitioner's first
proposition, and in connection with others an equally satisfac-
tory answer to the second.

By section 19 of article XI of the constitution it is pro-
vided: "In any city where there are no public works owned
and controlled by the municipality for supplying the same
with water or artificial light, any individual, or any company
duly incorporated for such purpose, under and by authority
of the laws of this state, shall, under the direction of the
superintendent of streets, or other officer in control thereof,
and under such general regulations as the municipality may
prescribe, for damages and indemnity for damages, have the
privilege of using the public streets and thoroughfares there-
of, and of laying down pipes and conduits therein, and con-
nections therewith, so far as may be necessary for introducing
into and supplying such city and its inhabitants either with
gaslight, or other illuminating light, or with fresh water for
domestic and all other purposes, upon the condition that the
municipal government shall have the right to regulate the
charges thereof."

This section very clearly gives to every municipal corpora-
tion the *right* to regulate the charges of any person or cor-
poration supplying gas to a city or its inhabitants through
pipes laid in the public streets, and in the absence of any other
provision relating to the matter would be held to imply the
power to exercise the right by the same methods by which its
legislative power is exercised generally, so that nothing would
be required to make the section completely operative beyond
a law for the organization of municipal corporations and
prescribing a mode of exercising their legislative power. In
other words, a right to regulate coupled with a lawful method
of exercising the right is all that is requisite to give validity

to a regulation, and here we have the right conferred by the constitution, and a mode prescribed by the legislature for its exercise. That is to say, cities may be organized—as the city of Pomona has been organized—under the General Municipal Corporation Act, by which they are empowered to pass ordinances. In cities of the fifth class they are provided with a board of trustees who are empowered to pass ordinances not in conflict with the constitution, or the laws of this state or of the United States, and the forms to be observed in the passage of ordinances are definitely prescribed. (Stats. 1883, p. 250.)

This would seem to be conclusive as to the validity of that part of the ordinance establishing the maximum rate, and it would be entirely so if it were not for the fact that section 33 of article IV of the constitution provides as follows: ''The legislature shall pass laws for the regulation and limitation of the charges for services performed and commodities furnished by telegraph and gas corporations, and the charges by corporations or individuals for storage and wharfage, in which there is a public use; and where laws shall provide for the selection of any person or officer to regulate and limit such rates, no such person or officer shall be selected by any corporation or individual interested in the business to be regulated, and no person shall be selected who is an officer or stockholder in any such corporation.''

It is contended that this section would be rendered entirely inoperative and meaningless if section 19 of article XI should be held to be self-executing—that the framers of the constitution having enjoined upon the legislature the duty of passing laws for the regulation and limitation of gas-rates, no valid ordinance can be passed under section 19 of article XI until the legislature has first obeyed the mandate which required it to regulate the mode of regulation. In answer to this it may be said that we have not held that said section is in itself absolutely self-executing. It merely conferred or secured a right without the power of exercising or enforcing it, outside of those municipal corporations then in existence, and armed with powers similar to those which Pomona and all cities of the fifth class have since acquired by organizing under the general municipal corporation act. But for the fact that the enactment of this law was specifically enjoined by section

6 of article XI, it might perhaps have been deemed a compliance with the mandate of section 33 of article IV. Evidently, however, if that section is to have any operation, it must be construed in some other sense. What exactly it does mean it is difficult to say. It may mean, as held by Judge Wilbur of the superior court, that the legislature was to pass a law for the organization of some board or commission to fix gas-rates for rural districts not incorporated but supplied with gas; and the wording of the last part of the section gives countenance to this view. Or it may mean that the legislature must enact laws making it compulsory upon the governing bodies of our municipal corporations to establish rates at frequent intervals, and prescribing penalties for failure to do so, as the constitution has itself done in regard to persons supplying water. Certainly if the legislature had passed a law of either character here suggested there would have been no ground upon which this court could have held that something more was requisite to carry out the purpose of the constitution. Petitioner's claim is, that the purpose of this section was the protection of persons supplying gas and other commodities by leaving section 19 of article XI inoperative as to the fixing of gas-rates until the legislature had enacted a code of procedure for the city councils providing, among other things, for notice and hearing and prescribing the period during which a rate once fixed should endure. But all this is purely conjectural. We do not know, and can hardly surmise, what the precise purpose of section 33 of article IV was. We can be very certain, however, of one thing that was not its purpose. Without bringing it in direct and irreconcilable conflict with section 19 of article XI it cannot be held to have required or authorized the regulation of gas-rates in any incorporated city to be taken away from the governing body of such city and given over to any person, board, or officer, to be selected outside of such governing body. And yet it does contemplate (in its last clause) the enactment of laws under which some person or officer is to be chosen (specially) to fix rates. This, as above stated, tends very strongly to sustain the view of Judge Wilbur, that the laws contemplated and enjoined by said section 33 are laws applicable solely to districts outside of incorporated cities, and if so the failure to enact such laws—due no doubt to the

absence of any actual occasion for applying them—can have no effect upon the operation of a provision of the constitution relating exclusively to municipal corporations.

But waiving this view, and assuming that the intention of section 33 of article IV was to lay a mandate upon the legislature to enact such laws as might be deemed necessary to secure fairness in fixing, and reasonable permanence in maintaining rates when fixed, it cannot be denied that the whole matter was committed to the discretion of the legislature as to the time for action and the scope of action. It was assumed that when action was called for the legislature would act, and that all safeguards found to be necessary would be provided, the municipalities being subject in the mean time to supervision and restraint by the courts if they should attempt anything in the nature of confiscation. What the framers of the constitution assumed in committing this matter to the discretion of the legislature the courts are justified in assuming. When further regulation is needed it will be provided, but in the mean time the failure of the legislature to act will not render nugatory a right granted by the constitution and re-enforced by a prescribed method for its exercise. The right and the power to regulate being conjoined, the duty to impose limits or conditions to the exercise of the right—supposing it to rest upon the legislature—so long as it remains unperformed, simply leaves the right unhampered except so far as it may be restricted or qualified by the general principles or specific provisions of our fundamental law.

The doctrine of this court is, that all constitutional provisions are self-executing when they can be given reasonable effect without the aid of legislation, unless it clearly appears that such was not the intention (*Winchester v. Howard,* 136 Cal. 440[1]), and a necessary corollary to this proposition is, that a constitutional provision not strictly self-executing becomes operative just as soon as it is supplemented by so much legislation as is absolutely necessary to supply its deficiencies; which is the case here.

As to the right of all persons to lay gas-pipes in the streets of incorporated cities, subject only to its express conditions, section 19 of article XI has been held to be self-executing (*In re Johnson,* 137 Cal. 115), and to hold that the correlative

[1] 89 Am. St. Rep. 153.

right of the municipalities to fix rates must remain in abeyance until the legislature passes some law in obedience to the supposed mandate of section 33 of article IV of the constitution might forever deprive the municipalities of the state of a protection which the constitution clearly designed to afford. For the legislature as to this matter cannot take the place of the municipal bodies. It cannot regulate the charges for gas within municipal boundaries, though, according to the claim of petitioner, it can by merely ignoring the supposed mandate of the constitution tie the hands of those upon whom the constitution has conferred the right. We find nothing in the decisions of this court which leads to such a conclusion, and if in the long array of cases cited by counsel from other jurisdictions there may be found reasoning tending to support their contention we do not feel constrained to follow it. We hold, on the contrary, that the two rights—the right to supply gas to cities, and the right to fix rates—go hand in hand. Each exists by force of the constitution, and each becomes effective upon the organization of a municipal government. If it be argued that the right to fix rates may be abused in the absence of restraining legislation, it may be answered that so also may the right to dig up and obstruct streets for the purpose of laying pipes be abused, but for any transgression of this sort the courts may be supposed to afford a sufficient remedy. In this instance we see nothing savoring of abuse in the provisions of the ordinance establishing the maximum rate. It was passed in March, 1903, was to take effect on the first of July following, and the rate was to stand for one year.

Petitioner's second proposition requires less extended discussion. Subdivision 16 of section 764 of the Municipal Corporation Act empowers the board of trustees in cities of the fifth class to impose fines, penalties, and forfeitures for any and all violations of ordinances, etc. (Stats. 1883, p. 254.) The ordinance in question, so far as it fixes the rate, is a valid ordinance, adopted not in pursuance of merely implied power, but in the exercise of a right specially secured by the constitution, and unless the law empowering the city to punish its violation as a misdemeanor is unconstitutional, or is inapplicable to an ordinance of this character, the penal clauses are also valid. We know of no ground upon which this law

can be held unconstitutional. The legislature has made it a misdemeanor to ask or receive more than the sum allowed by law for the carriage of freight or passengers by rail. (Pen. Code, sec. 525.) An overcharge for gas cannot be distinguished in principle from an overcharge for a railway fare, and therefore it cannot be said that the penal clauses of this ordinance are in conflict with the policy of the state, as was said in *Ex parte Ah You,* 88 Cal. 99.[1] In that case an ordinance was held unreasonable and invalid because it authorized a fine of one thousand dollars for an offense, when the statute of the state limited the punishment of grosser offenses of the same category to a fine of five hundred dollars. No such objection can be urged against this ordinance, which limits the penalty to three hundred dollars. Besides the case last cited, we are referred to a number of decisions of this court where municipal ordinances not passed in pursuance of expressly delegated power have been held invalid because unreasonable. (*Ex parte Hodges,* 87 Cal. 162; *Ex parte Whitwell,* 98 Cal. 73, etc.[2]) These cases, involving not the right to punish an infraction of the ordinance, but the right to enact its substantive provisions, manifestly have no application to an ordinance the substantive provisions of which are held valid.

The question whether the legislature can delegate to a municipal corporation the power to determine what shall constitute a criminal offense was considered by this court in *Ex parte Guerrero,* 69 Cal., at page 95. The decision of the point was perhaps not necessary in that case where the validity of the ordinance in question might have been rested wholly upon the direct grant of the police power contained in section 11 of article XI, but the court sustained the ordinance on both grounds, citing with approval a Connecticut case where the only authority of the municipality was that conferred by its charter. Not only that case but many cases decided in other jurisdictions, as well as the text of Dillon and other commentators on the law of municipal corporations, sustain the doctrine that whatever the legislature may punish as a misdemeanor it may authorize a municipal corporation to punish as a misdemeanor. In this state, as we have seen, there is a law making the receipt of illegal railway fares or

---

[1] 22 Am. St. Rep. 280.        [2] 35 Am. St. Rep. 152.

freights a misdemeanor—an act no more to be characterized as *malum in se* than the exaction of an excessive charge for gas. The constitutionality of this law, it is true, has never been passed upon, but no reason for holding it unconstitutional has been suggested, and none occurs to us. It would seem, indeed, that the exaction of excessive rates in a business charged with a public use is an offense of the same essential quality as extortion by public officers (Pen. Code, sec. 70), an offense clearly within the police power of the state. The ordinance, we conclude, is in no respect invalid.

There is an objection—not distinctly made, but suggested—to the sufficiency of the complaint upon which the petitioner was tried. It shows that he collected and received the excessive rate, not for himself, but for the corporation holding the franchise. But a corporation must act through the agency of natural persons, and the ordinance by its express terms applies to any person who collects or receives.

The judgment of the recorder's court is affirmed.

McFarland, J., Angellotti, J., Shaw, J., Van Dyke, J., Lorigan, J., and Henshaw, J., concurred.