[Civ. No. 2251. Third Appellate District.—June 30, 1921.]

ARA WARDROBE, Respondent, v. CHARLES A. MILLER et al., Defendants; CHARLES A. MILLER, Appellant.

[1] PARENT AND CHILD—ADMITTANCE OF MINOR SONS INTO FAMILY OF STEPFATHER—EVIDENCE.—In an action by a father to recover the reasonable value of the services of his minor sons, the court is not bound by the conclusions of witnesses that the defendant received the boys into his family, but it devolves upon the court, from a consideration of all the facts in evidence, to determine that question.

[2] ID.—TEMPORARY ADMITTANCE INTO FAMILY OF STEPFATHER—OBLIGATION TO SUPPORT—SECTION 209, CIVIL CODE, CONSTRUED.—The provision of section 209 of the Civil Code, to the effect that if a husband receives his wife's children by a former marriage "into his family and supports them, it is presumed that he does so as a parent," does not reasonably contemplate a mere temporary

relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose some obligation to support.

[3] ID.—EMPLOYMENT OF MINORS BY STEPFATHER—REASONABLE VALUE OF SERVICES—RIGHT OF FATHER TO RECOVER.—The father, to whom was awarded the custody of his two minor sons in an action for divorce, and who has not waived his right to their earnings, is entitled to recover from their stepfather the reasonable value of their services rendered to the latter, where such minors were not received into the family of the stepfather as members thereof, but only under a temporary and conditional arrangement.

[4] ID.—IMPLIED CONTRACT—SPECIAL INSTANCE AND REQUEST—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF.—The first amended complaint having alleged an implied contract of employment and the reasonable value of the services rendered, the trial court did not commit error in permitting the plaintiff, after the evidence was closed, to file a second amended complaint which alleged the performance of the services at the defendant's "special instance and request" and the reasonable value thereof.

[5] ID.—AMENDMENT OF COMPLAINT TO CONFORM TO PROOF—WAIVER OF OBJECTIONS.—After an amendment of a complaint to conform to the proofs, if the defendant makes no request that the submission of the cause be set aside or that he be permitted to offer further pleadings or proofs, he is in no position to complain.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. C. Minor and Miller & Channell for Appellant.

B. M. Bainbridge for Respondent.

FINCH, P. J.—Plaintiff sued to recover the reasonable value of the services of his minor sons, Edward and Raymond, aged nineteen and seventeen years, respectively. Judgment was rendered in favor of the plaintiff against defendant Charles A. Miller, and the latter appeals from the judgment and from the order denying his motion for a new trial. Plaintiff was formerly the husband of defendant Mrs. Charles A. Miller. They were divorced about May 20, 1908. The care, custody, and control of Edward and Raymond and their sister, two years younger than Raymond, were awarded in the decree to the plaintiff

herein. The father kept the three children in the Children's Home at Stockton for five years and thereafter until the twenty-third day of January, 1919, they lived with him and attended the public schools. The boys worked during vacation and at other times for their father and for strangers, the father collecting their wages and supporting them. On January 23, 1919, the plaintiff and his children engaged in a quarrel of such nature that the father and Edward came to blows, whereupon the children left, arriving at the home of defendants late at night, ten or twelve miles from the plaintiff's residence. Edward testified: "Father and I came to blows, he was going to hit me, he told me to get out and never come back. I think he said, 'If you go away you can stay away. Go away for good.' I left for good." The father testified: "I said, 'If you go, I shall collect your wages.' . . . Don't know what the boys did at the Miller's. I never went to see them nor made any inquiry about them while they were there, although I knew they were there. . . . Don't remember that I told them not to go. The oldest boy said, 'If you collect them [meaning wages] then I will go somewhere else.'" On arrival of the boys and their sister at the home of the defendants, Mr. Miller testified: "I told them that they could stay awhile, but that I did not want them there at all. If I would keep them there I would have trouble with their father. They said they would never go back to live with him. I allowed them to stay at the solicitation of my wife, and because they said that if we didn't let them stay there they would leave the country. . . . I never promised to pay them any wages. I told them if they wanted wages they better leave, as I would not pay them anything. I received them into my family and treated them as members of my family. They worked sometimes just as other boys in the neighborhood worked. Helped to haul grain, irrigate, and milk. The boys did not take the places of any laborers that I was bound to have. As to the milking, we would have done it if the boys hadn't been there. Three hired men were on the place when the boys came, two of them doing general work at $2.25 per day and board; they left after the boys came, and one at $3 per day and board." Mr. Miller further testified that from March 25th to May 26th they both milked. "Raymond worked about sixteen days in haying, hauling,

and irrigating. Edward, after I had taught him the use of the milking machine, which took about two or three days, did the milking from May 26th until he left in August, I assisting him now and then. We did not work hard; on hot days when hauling we would tie the team to the fence and stay in the shade until we cooled off. I made no attempt to coerce the boys to stay. I never promised to pay them any wages. Told them that I didn't want any trouble with their father. If I agreed to pay wages, their father would claim them and I wanted it understood that if they stayed no wages would be paid." Mrs. Miller testified: "At my request Mr. Miller received all three of them into our family and they were treated in all respects as our own children, and allowed them to stay. We bought their clothes, did their mending and washing, took them to dances, a school entertainment and a movie, Lillian going to school every morning with the oldest Miller child. I gave them money to attend the movies, took them to two or three school entertainments and dances." Edward testified: "Mrs. Miller said to me in October, 1918, in her yard, I could come there and get $2 a day and board. Mr. Miller was near by on the sidewalk. Mr. Miller has never said he would pay me any wages, but if your father tries I guess he can collect them. . . . I got clothes, $1 in cash, which I saved, got a couple of hair-cuts and went to a movie, never went any place but stayed on the ranch all the time; got three pairs of shoes ($3.50 and $5.50 per pair), two pairs overalls ($2.50 and $2.75 per pair), two suits of underwear, six pairs of socks (50c per pair), two work shirts ($1.50 each), that is all that I can recall." Raymond testified: "We spoke about wages one time to Mr. Miller; he said we couldn't collect wages, that our father could. This conversation was when we were making the second cutting around the alfalfa, some time in May, I think. We were sitting at the breakfast-table, no hired man there; my brother started the talk; he said we ought to be getting wages; Mr. Miller said he wouldn't pay any wages because father would collect them." The witness was asked: "Didn't Mr. Miller receive you, your brother, and sister into his family and treat you just as his own children were?" The witness replied, "Yes."

Some time in August, 1919, Mr. Miller and Edward "had a wrangle" and the latter with his brother and sister returned to their father.

The court found that the stepfather, Charles A. Miller, did not receive the boys into his family and support them; that the food and clothes furnished them were in part consideration of their services; that the services performed by them were not "rendered upon an express or any other understanding" that they were to receive no compensation other than their board and lodging; and that the reasonable value of their services above that of their board and lodging, after deducting credits due Miller on account of clothing, etc., is the sum of $462, for which sum judgment was rendered.

[1] Appellant contends that the evidence conclusively shows that he received the boys into his family as members thereof and that, therefore, recovery can be had only upon proof of an express contract to pay for their services, citing section 209 of the Civil Code. The court was not bound by the conclusion of the witnesses that Miller had received the boys into his family, but it devolved upon the court, from a consideration of all the facts in evidence, to determine that question. The arrangement for the stay of the boys at the home of defendants was of a temporary character and apparently conditional. Miller testified: "I told them they could stay awhile, but that I did not want them there at all. If I would keep them I would have trouble with their father." [2] The provision of section 209 of the Civil Code, to the effect that if a husband receives his wife's children by a former marriage "into his family and supports them, it is presumed that he does so as a parent," does not reasonably contemplate a mere temporary relation to be assumed and disclaimed at will, but the arrangement must be of such character as to impose some obligation to support. The relation must be similar to that of a natural parent to his children. A pertinent inquiry would be, if one of the boys had become a helpless cripple while he was living with Miller without the latter's fault, whose would have been the obligation to support—the father's or the stepfather's? Under the circumstances disclosed, the answer would seem to be apparent. To enable a stepfather to invoke the provisions of section 209 the obligation to sup-

port need not necessarily be such as to continue during the whole of the child's minority but it should be something more than merely temporary. **[3]** It is at least doubtful whether section 209 has any application to the demand of a father entitled to the custody of his child for the reasonable value of the minor's services. "Where an employer made a contract with a minor as to the amount of wages, the father may either adopt the contract and claim whatever is due under it, or repudiate it and claim the reasonable value of the services rendered." (20 R. C. L. 607.) It would seem to follow logically that if the minor agreed to render the services without compensation the father might collect the reasonable value thereof. "The right to a child's services and earnings is reciprocal to the duty to support." (Id. 608.) In discussing the father's right to the child's earnings, it is said: "It is certainly perfect while the period of the child's nurture continues. But if this is all, it can be of little consequence, because the child's labor and services are for that period of little value; nor could compensation be thus afforded for the many years when the child was entirely helpless." (Schouler's Domestic Relations, 5th ed., sec. 252.) "His right to their [his children's] services, like his right to their custody, rests upon the parental duty of maintenance, and it is said to furnish some compensation to him for his own services rendered to the child." (*McGar* v. *National etc. Worsted Mills,* 24 R. I. 447, [96 Am. St. Rep. 749, 60 L. R. A. 122, 53 Atl. 320] ; *Barrett* v. *Riley,* 42 Ill. App. 258.) These principles have a direct application to the facts of this case as disclosed by the evidence. "The plaintiff was not precluded from recovering the wages, either by the fact that the work was done by the son against his express dissent, or by the fact that the defendant had notified him to come and take his son away, and he had neglected to do so." (*Smith* v. *Smith,* 30 Conn. 111.) In this case the plaintiff, Wardrobe, had not waived his right to the earnings of his sons. When they left home he expressly stated that he would collect the wages earned. Whether this statement was communicated to Miller or not does not appear nor is it material, since the father had done nothing to cause Miller to believe that the former would waive his right and Miller seems to have understood the contrary, by his own testimony.

[4] The first amended complaint alleged an implied contract of employment and the reasonable value of the services rendered. After the evidence was closed the court permitted the plaintiff to file a second amended complaint, which alleged the performance of the services at Miller's "special instance and request" and the reasonable value thereof. This is assigned as error. The first amended complaint was probably sufficient, but whether that be true or not there was no error in permitting the amendment. "Our courts have held frequently . . . that an amendment which changes the count from one upon an express contract to one upon *quantum meruit* does not substitute a new cause of action." (*Turner & Dahnken* v. *Bauer,* 28 Cal. App. 312, [152 Pac. 308]; *Cox* v. *McLaughlin,* 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100].) "An amendment to conform to the proof may always be made, provided the cause of action is not thereby changed." (*Koch* v. *Wilcoxon,* 30 Cal. App. 520, [158 Pac. 1049]; *Hancock* v. *Board of Education,* 140 Cal. 554, [74 Pac. 44].) [5] After an amendment to conform to the proofs, if the defendant makes no request that the submission of the cause be set aside or that he be permitted to offer further pleadings or proofs, he is in no position to complain. (*Gartlan* v. *C. A. Hooper & Co.,* 177 Cal. 422, [170 Pac. 1115].)

Appellant urges that the court erred in overruling his demurrer to the second amended complaint and in overruling his objections to certain testimony, on the ground that no express contract was shown. What has already been said disposes of these objections.

The appeal from the order is dismissed and the judgment affirmed.

Hart, J., and Burnett, J., concurred.