[Civ. No. 4665. First Appellate District, Division One.—January 8, 1925.]

PETER A. FARLEY, Appellant, v. R. A. STIRLING et al., Defendants; J. B. HICKMAN, Horticultural Commissioner, et al., Respondents.

[1] COUNTIES—MANUFACTURE AND SALE OF POISONED BARLEY—IN-JUNCTION—EVIDENCE—FINDINGS — JUDGMENT.—In this proceeding by a taxpayer to enjoin the manufacture and sale by the county of poison barley to be used in the extermination of ground-squirrels, the evidence was amply sufficient to sustain the findings of the trial court to the effect that the practice complained of was carried on with the sole design of speedily and effectively destroying ground-squirrels, and "as a sanitary and salutary measure conducive to and in promotion of the general health and economic well-being" of the people of the county, that it was impracticable for land owners of the county to obtain enough suitable, effective, and reliable squirrel poison in the open market, or at prices land owners could reasonably afford to pay, that the county purchased the ingredients separately, which were afterward mixed and distributed by the horticultural commissioner directly to the farmers, ranchers, and landholders of the county "at the actual cost of said ingredients to the county," no charge being made for mixing and distribution, that no profit was made or loss sustained by the county in the manufacture and distribution of poisoned barley, that said poison barley was not sold at wholesale or retail quantities to the "general public," nor in the "open market," that said undertaking by the county was not carried on as a business, and that the practice in question did not violate any of petitioner's constitutional rights; and such findings justified the conclusion that petitioner was not entitled to the relief prayed for.

[2] ID.—IMPOSITION OF TAXES — PROTECTION OF PUBLIC HEALTH — SUPPRESSION OF DESTRUCTION OF PROPERTY.—While taxes may not be imposed by a county for the purpose of establishing or operating a private competitive business, and wherein in doing so it may possibly suffer tremendous loss, and a county may not exercise any powers beyond those expressly granted by the law or fairly implied therefrom, or which are not essential to its declared objects and purposes, the manufacture and sale of poison barley to farmers and land owners of the county cannot be regarded as a private commercial enterprise, where financial profit

1. Right of municipality to enter into competition in business with citizen, note, Ann. Cas. 1918B, 104.

to the county is not its object or result, but is a measure adopted for the purpose of protecting the health of the people of the county and to prevent injury and destruction to their property from an existing evil.

[3] ID.—REGULATIONS PERMITTED — REASONABLE MEASURES. — Under section 11 of article XI of the state constitution and subdivision 31 of section 4041 of the Political Code, any county may make, within the limits of said county, all such police, sanitary and other regulations as are not in conflict with general laws; and when a county, asserting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures, having reasonable relation to that end, as it may deem necessary in order to make that action effective.

[4] ID.—POLICE POWERS—COMBATING COMMON NUISANCE.—While the exercise of county police powers has its limitations, which depend largely upon the circumstances of each case, and beyond which a county may not go, it cannot be said to be an unreasonable exercise of police power for a county to aid its landholders in combating a common nuisance, such as ground-squirrels.

[5] ID.—EVIDENCE—AMENDMENT OF ANSWER.—In this proceeding by a taxpayer to enjoin the manufacture and sale by the county of poison barley to be used in the extermination of ground-squirrels, the trial court did not err in allowing the respondent county to amend its answer to conform to the proofs.

[6] ID. — AMENDMENT TO CONFORM TO PROOFS — WAIVER OF OBJECTION.—After a party amends to conform to the proofs and the opposite party makes no request that the submission of the cause be set aside or that he be permitted to offer further pleadings or proof, he is in no position to complain.

---

(1) 15 C. J., p. 642, n. 86, p. 646, n. 39.    (2) 15 C. J., p. 419, n. 98.    (3) 15 C. J., p. 420, n. 1.    (4) 15 C. J., p. 420, n. 1.    (5) 31 Cyc., p. 448, n. 65.    (6) 3 C. J., p. 793, n. 33.

APPEAL from a judgment of the Superior Court of Monterey County. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

James A. Hall for Appellant.

Albert E. Warth and Chas. B. Rosendale for Respondents.

KNIGHT, J.—An appeal by plaintiff from a judgment in favor of defendants, in an action brought by plaintiff, as a taxpayer of Monterey County, to enjoin said county, its su-

---

5. See 21 Cal. Jur. 207.

pervisors, and horticultural commissioner from manufacturing and selling therein poisoned barley to be used in the extermination of ground-squirrels. Before trial the action was dismissed as to the members of the board of supervisors.

Appellant contends upon this appeal that the evidence is insufficient to support the findings and that the findings do not sustain the judgment; also that the enterprise engaged in by the county was illegal and that taxation of property for that purpose constituted a taking of the property without due process of law in violation of section 13 of article I of the state constitution and of the fourteenth amendment of the federal constitution.

[1] The trial court found that the practice here complained of was undertaken and carried on by respondents with the sole design of speedily and effectively destroying ground-squirrels, and "as a sanitary and salutary measure conducive to and in promotion of the general health and economic well being of the people of said Monterey County"; that it was impracticable for the land owners of that county to obtain enough suitable, effective, and reliable squirrel poison in the open market for the purposes stated and that the prices at which those poisons were obtainable "were so great that the farmers, ranchers and landholders of said Monterey County could not be induced to undertake the extermination of ground-squirrels," thereby making it necessary for the county to provide such poisons; that the county purchased the necessary ingredients, including the .poison and the grain, separately, and that the same were afterward mixed and distributed by the county horticultural commissioner and his deputies directly to the farmers, ranchers, and landholders of said county at the actual cost of said ingredients to the county, no charge being made for mixing and distribution; that occasional sales were made through local merchants upon which a ten per cent commission was allowed, but that the quantity sold through said merchants was insignificant, amounting to practically nothing; that no profit was made or loss sustained by the county in the manufacture and distribution of said poisoned barley. The court further found that said undertaking by the county was not carried on as a business nor was said poisoned barley sold at wholesale or retail quantities to the "general public" nor in the "open market." It further found that the practice complained of did not

violate any of appellant's constitutional rights. From these findings the trial court concluded, as a matter of law, that appellant was not entitled to the relief prayed for and judgment was accordingly entered in favor of respondents.

The evidence, we think, is amply sufficient to support the findings. Aside from the ultimate facts set forth in the findings the evidence shows that ground-squirrels, as carriers of human disease and destroyers of crops, were considered a menace to health and property by the health and agricultural departments of both federal and state governments and that their extermination was not only requested and encouraged by those departments of government, but under state legislation their destruction was made compulsory; that at the time the county engaged in and carried on this enterprise there was a scarcity of poisons offered for sale in the open market, many of them were ineffective, and the high prices for which they were being sold made it impossible for the local authorities and the landholders in that county to cope with the squirrel evil; that consequently Monterey County, together with many of the other counties in the state, found it necessary to manufacture and supply directly to the farmers and landholders of their respective counties sufficient quantities of suitably poisoned barley, at reasonable prices, in order that the law requiring squirrel extermination be complied with and to protect the health and property of the community. The evidence further shows that there was no compulsion about the purchase of the county product and that sales were made only to land occupants in Monterey County, there being but one sale made to an outside resident so far as the evidence shows, and in that case the purchaser was the owner of a ranch situate in Monterey County and at least a portion of the poisoned barley purchased was used on said ranch; whether or not the rest of the purchase was used elsewhere does not appear. The volume of gross sales made by the county, according to the testimony given by the horticultural commissioner, averaged about three thousand seven hundred dollars a year for the five years preceding the commencement of this action, which amount, considering the vast area of farming and ranching lands embraced within the boundaries of Monterey County, serves to corroborate the statement

70 Cal. App.—34

made by said commissioner that the use of the county product was confined to that county.

[2] Regarding the legal contentions urged by appellant, it may be conceded that taxes may not be imposed by a county for the purpose of establishing or operating a private competitive commercial business; for illustration, a cement plant wherein a county seeks to manufacture and sell its product in the open market in competition with others, preference being given only to public corporations; and wherein also in doing so it may possibly suffer tremendous loss. (*City of Los Angeles* v. *Lewis,* 175 Cal. 777 [167 Pac. 390].) Nor may a county exercise any powers beyond those expressly granted by the law or fairly implied therefrom, or which are not essential to its declared objects and purposes. (*City of Madera* v. *Black,* 181 Cal. 312 [184 Pac. 397].) We think it obvious, however, that the instant case does not fall within either of those inhibited classes. The practice here engaged in cannot be regarded as a private commercial business in view of the fact that financial profit to the county was not, in fact, its object or result. It was a measure adopted for the purpose of protecting the health of the people of the county and to prevent injury and destruction to their property from an existing evil, and as such the enterprise engaged in finds abundant express legal sanction. [3] Section 11 of article XI of the state constitution and subdivision 31 of section 4041 of the Political Code provide that any county may make, within the limits of said county, all such police, sanitary, and other regulations as are not in conflict with general laws. Regarding such constitutional power it has been held that when a county, asserting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures, having reasonable relation to that end, as it may deem necessary in order to make that action effective. (*People* v. *Velarde,* 45 Cal. App. 520 [188 Pac. 59].) And subdivision 26 of said section 4041 of the Political Code grants full authority to boards of supervisors "to provide for the destruction of gophers, squirrels, other wild animals, noxious weeds," etc. In *Ex parte Hodges,* 87 Cal. 162 [25 Pac. 277], in discussing the authority granted the county under that provision to proceed in the matter of squirrel extermination it was said that "this is a power

that should be upheld on all occasions where the means employed are reasonable and not otherwise objectionable."

[4] It cannot be said to be an unreasonable exercise of police power for the county to aid its landholders in combating a common nuisance; and, as already pointed out, the plan here adopted is not obnoxious to the law. The exercise of county police powers has its limitations, of course, which depend largely upon the circumstances of each case, and beyond which a county may not go; but we are of the opinion that in the instant case, in view of the conditions set forth by the findings and shown by the evidence under which the enterprise was instituted and carried on, those powers were not transcended, and that the practice complained of, when carried on under those conditions, does not reach the proportions of a private business venture in which a county is forbidden to engage.

[5] There was no error committed by the trial court in allowing respondent Monterey County to amend its answer to conform to the proofs. [6] Moreover, after a party amends to conform to the proofs and the opposite party makes no request that the submission of the cause be set aside or that he be permitted to offer further pleadings or proof, he is in no position to complain. (*Gartlan* v. *C. A. Hooper & Co.*, 177 Cal. 422 [170 Pac. 1115]; *Wardrobe* v. *Muller*, 53 Cal. App. 370 [200 Pac. 77].) So far as the record discloses there was no such request made in the instant case.

The judgment is affirmed.

Tyler, P. J., and St. Sure, J., concurred.