[No. B095022. Second Dist., Div. Six. Aug. 20, 1996.]

COMMUNITY MEMORIAL HOSPITAL OF SAN BUENA VENTURA et al., Plaintiffs and Appellants, v.
COUNTY OF VENTURA et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*This opinion is certified for publication with the exception of part III.

**COUNSEL**

Arthur E. Schwimmer, Cadwalader, Wickersham & Taft, John E. McDermott, John C. Kirkland, Maria T. Mascaro, Ferguson, Case, Orr, Patterson & Cunningham, William E. Paterson, Benton, Orr, Duval & Buckingham and James T. Sherren for Plaintiffs and Appellants.

James L. McBride, County Counsel, Noel A. Klebaum, Assistant County Counsel, O'Melveny & Myers, James R. Asperger and Peter B. Ackerman for Defendants and Respondents.

**OPINION**

**GILBERT, Acting P. J.**—Here we hold that a county's policy of accepting paying patients at its public hospital is authorized by the Legislature, does

not exceed the county's police powers and does not constitute a gift of public funds. We also hold that a county is not a person subject to suit under the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) or the unfair competition statute (Bus. & Prof. Code, § 17200 et seq.) for acts relating to the operation of its public hospital. We affirm.

FACTS

Community Memorial Hospital (CMH) is a private nonprofit general acute care hospital located in the City of Ventura. Ventura County Medical Center (VCMC) is a public general acute care hospital located in the City of Ventura and owned by the County of Ventura (County).

CMH and individual taxpayers (herein collectively CMH) filed an action against the County to enjoin unlawful and unfair competition. The second amended complaint alleged three causes of action. The first cause of action alleged that the County lacked the authority to compete with private hospitals for nonindigent patients. The second cause of action alleged that the County was violating state and federal law by "deflecting" indigent patients to private hospitals, by refusing to accept transfers of indigent patients from private hospitals and by giving County employees preference in medical treatment. The third cause of action alleged that the County violated the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) by deflecting indigent patients, offering bonuses to physicians to refer patients, offering gift certificates to Medi-Cal patients and giving County employees preferences.

The County demurred to the second amended complaint. The trial court, Judge Frederick Jones, overruled the demurrer as to the first and second causes of action, but sustained the demurrer as to the third cause of action. The reason the court gave for sustaining the demurrer as to the third cause of action was that the County was not a person within the meaning of the Unfair Practices Act.

CMH filed a third amended complaint that repeated the first and second causes of action from the second amended complaint. The third cause of action contained many of the same allegations as the third cause of action in the second amended complaint, but alleged interference with contract and illegal contracts instead of violation of the Unfair Practices Act.

The third amended complaint added fourth and fifth causes of actions. These causes of action questioned the propriety of the County's attempt to issue certificates of participation to finance the construction of new facilities at VCMC.

The parties made cross-motions for summary adjudication on the first, fourth and fifth causes of action, asking the trial court to determine whether the County had the authority to treat nonindigent patients and to issue certificates of participation for new construction. CMH also made a motion for summary adjudication on the second cause of action, asking the trial court to determine that the County violated state and federal law by deflecting and refusing transfer of indigent patients and by giving County employees preference in treatment.

The trial court issued a memorandum of decision dated July 24, 1995. The court stated it is undisputed that, "[t]he County is now and has been competing with nongovernmental hospitals and physicians for revenue generating patients." The court ruled that the County had the authority to do so. The court also ruled that the County was not required to make findings that treating such patients will not have an adverse impact on the private sector. Finally, the court ruled in the County's favor in its attempt to issue certificates of participation. The court granted the County's motion for summary adjudication as to the first, fourth and fifth causes of action and denied CMH's motions for summary adjudication as to the first and second causes of action.

In order to expedite appeal, the parties stipulated to a dismissal without prejudice of "[a]ll remaining issues and causes of action . . . which are not resolved by the Court's memorandum of decision of July 24, 1995 . . . ."

While this appeal was pending, voters rejected the County's attempt to issue certificates of participation. Issues raised in the fourth and fifth causes of action, in which the County's right to issue certificates of participation was challenged, are now moot.

### DISCUSSION

### I

CMH contends the trial court lacked the jurisdiction to grant summary adjudication. CMH contends the issues adjudicated were essentially the same propositions of law which the County argued and lost on demurrer. CMH claims that, under Code of Civil Procedure section 1008, the court had no jurisdiction to revisit those issues.

Code of Civil Procedure section 1008 limits the trial court's jurisdiction to reconsider, modify, amend or revoke a prior order. A motion for reconsideration must be made within 10 days of service of notice of entry and must be based on "new or different facts, circumstances or law . . . ."

But a motion for summary judgment or adjudication is not a reconsideration of a motion overruling a demurrer. They are two different motions. To hold that a trial court is prevented in a motion for summary judgment or adjudication from revisiting issues of law raised on demurrer is to condemn the parties to trial even where the trial court's decision on demurrer was patently wrong. The result would be a waste of judicial resources, the very evil Code of Civil Procedure section 1008 was intended to avoid. Nothing in the language of section 1008 compels its application to the instant motion for summary adjudication. In fact, to apply it here would run contrary to its purpose. To the extent *Gilberd* v. *A C Transit* (1995) 32 Cal.App.4th 1494, 1502 [38 Cal.Rptr.2d 626] may be read to the contrary, we decline to follow it.

## II

Next we consider the heart of the case: whether the County has the authority to compete with private hospitals for paying patients.

### *Legislative Authority*

Contrary to CMH's argument, Welfare and Institutions Code section 14000.2 authorizes the County to treat paying patients. That section provides in part: "[T]he board of supervisors of each county may prescribe rules which authorize the county hospital to integrate its services with those of other hospitals into a system of community service which offers free choice of hospitals to those requiring hospital care. The intent of this section is to eliminate discrimination or segregation based on economic disability so that the county hospital and other hospitals in the community share in providing services to paying patients and to those who qualify for care in public medical care programs."

There is simply no way for a county hospital to "eliminate discrimination or segregation based on economic disability" or to "share in providing services to paying patients" without accepting paying patients who could afford private hospitals.

CMH points out that the County admits to using employed physicians to treat all patients, including paying patients. CMH contends that this practice violates the rule against the corporate practice of medicine. (Citing Medical Practice Act [Bus. & Prof. Code, § 2000 et seq.]; *People* v. *Pacific Health Corp.* (1938) 12 Cal.2d 156, 158-159 [82 P.2d 429, 119 A.L.R. 1284].) But any general ban on the corporate practice of medicine must yield to Welfare and Institutions Code section 14000.2, which expressly authorizes county

hospitals to serve paying patients. In case of a conflict between statutes, a specific statute will govern over a more general one. (*Massa* v. *Southern Cal. Rapid Transit Dist.* (1996) 43 Cal.App.4th 1217, 1221 [51 Cal.Rptr.2d 164].)

In any event, laws prohibiting the corporate practice of law or medicine do not apply to counties. (See *Estate of Miller* (1936) 5 Cal.2d 588, 597 [55 P.2d 491] [laws prohibiting the practice of law by a corporation do not apply to the state or to counties].)

*Police Power*

CMH contends that, even if legislation authorizes it, competing for paying patients to help defray the cost of care for indigent patients is not a valid exercise of the police power.

The police power is the authority to enact laws to promote the public health, safety, morals and general welfare. (*Goodman* v. *Cory* (1983) 142 Cal.App.3d 737, 741 [191 Cal.Rptr. 272].) Legislation is within the police power if it is reasonably related to a proper legislative goal. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].) Where a law is challenged as not being a valid exercise of the police power, all presumptions favor its validity, and it will be upheld unless its unconstitutionality clearly and unmistakenly appears. (*Goodman* v. *Cory, supra,* 142 Cal.App.3d at p. 741.) Courts will not substitute their social and economic beliefs for the judgment of the legislature. (*Ibid.*)

The court in *Berman* v. *Parker* (1954) 348 U.S. 26, 32 [99 L.Ed. 27, 37, 75 S.Ct. 98] said of the police power: "An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive."

CMH relies on *Goodall* v. *Brite* (1936) 11 Cal.App.2d 540 [54 P.2d 510]. In *Goodall,* Kern County operated a public hospital that provided free care to all county residents, regardless of the ability to pay. There was no shortage of private hospitals willing to take paying patients. The court held that providing free care to those able to pay where there are adequate private hospitals exceeds the county's police powers. The court reasoned that providing free care to those who could afford it was not concerned with the public welfare but with the preservation of private resources. (*Id.,* at p. 547.)

*Goodall* is distinguishable. There plaintiffs challenged the county's policy of treating for free those who could afford to pay. The only identified purpose for that policy was to preserve private resources. Here plaintiffs challenge the County's policy of accepting paying patients even where the purpose of the policy is to defray the cost of treating the indigent. If, as CMH concedes, caring for the indigent is within the County's police powers, raising money to accomplish that purpose is also within the County's police powers. That the County chooses to raise money by accepting paying patients rather than through increased taxes or from some other source is not for the courts to question.

That the County's policy has the effect of creating competition with private hospitals does not mean the policy exceeds the County's power to act for the health and general welfare of its citizens. Thus, the police force may decrease the demand for private security; public transportation may decrease the demand for private transportation; and public recreational facilities may decrease the demand for private forms of entertainment. Yet no one seriously questions the power of the County to provide such public services even to those who can afford to pay for privately owned services. We fail to see why a public hospital should be different.

### *Gift of Public Money*

Gifts of public money violate article XVI, section 6 of the California Constitution. Money spent for public purposes is not a gift even though private persons may benefit. (*County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141].) The determination of what constitutes a public purpose is primarily a matter for the Legislature and will not be disturbed as long as it has a reasonable basis. (*Ibid.*)

CMH claims that public entities are barred by the constitutional prohibition against gifts of public money from engaging in proprietary activity as a revenue generating device. But it is difficult to see how money expended in the generation of revenue could be considered a gift. Most businesses expend money to generate revenue, and they do not consider themselves engaged in gift giving. In fact, the cases cited by CMH do not support its claims. Thus, for example, *Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23 [118 Cal.Rptr. 422], and *Board of Trustees* v. *County of Santa Clara* (1978) 86 Cal.App.3d 79 [150 Cal.Rptr. 109], involve claims of entitlement to property tax exemptions. The cases have nothing to do with gifts of public funds.

The closest CMH comes is a case from 1917. In *City of Los Angeles* v. *Lewis* (1917) 175 Cal. 777 [167 P. 390], the city owned a cement plant. It

had used the product of the plant to construct its waterworks. The Legislature passed a statute authorizing counties to lease and operate cement plants. The County of Los Angeles leased the plant from the city, but the county comptroller refused to pay the rent, contending it constituted the use of public funds for private purposes. The court agreed, pointing out that the lease required the county to manufacture a specific amount regardless of the county's needs. The court reasoned that the county must sell the excess or suffer a tremendous financial loss. (*Id.*, at p. 784.) The court said, "[U]nder our system of government taxes can be laid only for a public object–one within the purposes for which governments are established." (*Id.*, at pp. 779-780.)

Whatever the case may say about government's interest in cement production (we cannot be sure), it is beyond dispute that the County has a legitimate interest in providing medical care to the indigent. Providing such care is "within the purposes for which governments are established." If the County expends money in pursuit of revenue to fulfill that public purpose, the expenditure is itself for a public purpose.

CMH's reliance on *Goodall* v. *Brite, supra,* 11 Cal.App.2d 540 is misplaced. There the court held that treating patients who could afford available private hospitals for free not only exceeded the county's police powers, it also constituted a gift of public funds. Here, of course, it is not the County's policy to treat patients for free if they can afford to pay. The County accepts nonindigent patients as a revenue generating device. It may be true that the County offers discounts, but many businesses offer discounts as a revenue generating device; that does not mean they are making gifts.

Public health is a legitimate interest of government. Thus, the expenditure of money to promote health is an expenditure for a public purpose. That private persons may incidently benefit does not change the purpose of the expenditure. (*County of Alameda* v. *Janssen, supra,* 16 Cal.2d at p. 281.)

III*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

*See footnote, *ante*, page 199.

## IV

Finally, we take up the question whether the County is a person within the meaning of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) and the unfair competition statute (§ 17200 et seq.).[2]

Business and Professions Code section 17021, part of the Unfair Practices Act, defines "person" as "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation." Section 17201 defines "person" for the purposes of the unfair competition statute: "[T]he term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."

The beginning point of statutory construction is the plain words of the statute. (*Pirkig* v. *Dennis* (1989) 215 Cal.App.3d 1560, 1565 [264 Cal.Rptr. 494].) The words of the statute must be given their ordinary meaning and receive a commonsense construction. (*Ibid.*)

Although Government Code section 23003 states that "[a] county is a body corporate and politic . . . ," strictly speaking, a county is neither a person, nor a corporation, nor a municipal corporation; it is a subdivision of the state. (*Estate of Miller, supra,* 5 Cal.2d at p. 597; *Riley* v. *Stack* (1932) 128 Cal.App. 480, 484.) That the definitions relied on by CMH do not expressly include counties is a strong indication that the Legislature did not intend counties to be subject to the statutes in question.

CMH relies on *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491, footnote 12 [96 Cal.Rptr. 553, 487 P.2d 1193]. There the Attorney General sought a writ of mandate to compel two counties to pay money to a regional planning agency. Code of Civil Procedure section 1085 stated that a writ may be issued to any "inferior tribunal, corporation, board or person"; "county" was not expressly mentioned in the statute. Nevertheless, our Supreme Court stated, "In view of Government Code section 23003, which provides that a county is 'a body corporate and public,' and

---

[2]Initially we had some concern about deciding this issue. It appeared to us to have been dismissed pursuant to the stipulation that all issues and causes of action not resolved by the summary adjudication are dismissed. We wrote to the parties and CMH assured us that this issue was not dismissed by the stipulation. That the County did not raise the stipulated dismissal in discussing this issue in its respondent's brief lends credence to CMH's claim.

Nor is CMH barred from raising this issue on appeal because it filed an amended complaint after the trial court sustained the County's demurrer on the ground that the County was not a person. Code of Civil Procedure section 472c, subdivision (b)(1) expressly allows an appeal under such circumstances.

section 23004, subdivision (a) of the same code, which states that counties may sue and be sued, we think that a county is sufficiently corporate in character to justify the issuance of a writ of mandate to it." (5 Cal.3d at p. 491, fn. 12.)

But in *County of El Dorado* the question concerned a remedy for violation of a clear statutory duty. Here it is not at all clear whether the County has any duties under the statutes relied on by CMH.

We believe the proper approach is one taken by our Supreme Court in cases subsequent to *County of El Dorado*. "[I]n the absence of express words to the contrary, neither the state nor its subdivisions are included within the general words of a statute. [Citations.] But this rule excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign governmental powers. 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only.' [Citations.]" (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276-277 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Regents of University of California* v. *Superior Court* (1976) 17 Cal.3d 533, 536 [131 Cal.Rptr. 228, 551 P.2d 844].)

The question here is whether inclusion of the County in the Unfair Practices Act or the unfair competition statute would result in an infringement upon the County's sovereign powers. We need not decide the question in the abstract as it relates to County activities generally. Instead, we confine our consideration of the question as it relates only to the operation of the County's hospital.

There can be no dispute that guarding the public health is within the County's sovereign powers. The operation of a public hospital, even one that accepts paying patients, is simply a means of implementing that power. Thus, inclusion of the County in the Unfair Practices Act or the unfair competition statute as it relates to the operation of its hospital would result in an infringement on its sovereign powers.

That the County hospital accepts paying patients does not mean it acts in a capacity no different from any private commercial entity. No private hospital or other commercial entity is burdened with the obligation of furnishing free care to indigents to the same extent as the County. Even CMH does not dispute the County's purpose in accepting paying patients is to assist it in discharging its obligation to the indigent.

The cases relied on by CMH are distinguishable. In *City of Los Angeles* v. *City of San Fernando, supra*, 14 Cal.3d 199, 273-277, the court decided that a city was a person within the meaning of a statute prohibiting any person from gaining prescriptive title against a public entity. In so deciding, the court stated, "The result is not a diminution of sovereign powers but only the elimination of prescription as a means of transferring property from one arm of the government to another." (*Id.*, at p. 277, fn. omitted.) In contrast, a statute that restricts the County in the operation of its public hospital infringes on its sovereign powers.

In *Regents of University of California* v. *Superior Court, supra*, 17 Cal.3d 533, the court decided that the university was subject to the laws against usury. The court pointed out that the university is not clothed with the sovereignty of the state and is not the sovereign. (*Id.*, at p. 536.) The decision in *Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161], that the State Compensation Insurance Fund may be liable for punitive damages, may be distinguished on the same basis. The fund has no sovereign powers. Moreover, the court relied on Insurance Code section 11873 exempting the fund from the provisions of the Government Code made applicable to other state agencies.

Finally, *People* v. *Centr-O-Mart* (1950) 34 Cal.2d 702 [214 P.2d 378] held that the state is a person for the purposes of bringing an action under the Unfair Practices Act. The case is of no help to CMH. The court reached the result by applying the rule that "[a] statute will not be construed to impair or limit the sovereign power of the state to act in its governmental capacity and perform its governmental functions in behalf of the public in general, unless such intent clearly appears." (*Id.*, at pp. 703-704.) The same rule that compelled the court in *Centr-O-Mart* to conclude the state was a person for the purpose of bringing an action compels us to conclude the County is not liable under the act.

The judgment is affirmed. Costs are awarded to respondents.

Yegan, J., and Coffee, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied November 13, 1996. Werdegar, J., did not participate therein. Mosk, J., and Chin, J., were of the opinion that the petition should be granted.

---

*Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.