[No. D041183. Fourth Dist., Div. One. Mar. 15, 2004.]

SAN DIEGO COUNTY VETERINARY MEDICAL ASSOCIATION, Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

COUNSEL

Law Offices of Ronald T. Vera and Ronald T. Vera; Singleton & Associates and Terry L. Singleton for Plaintiff and Appellant.

John J. Sansone, County Counsel, and Morris G. Hill, Deputy County Counsel, for Defendant and Respondent.

OPINION

**HALLER, J.**—The San Diego County Veterinary Medical Association (Association) sued the County of San Diego (County) seeking injunctive and declaratory relief to prevent the County from conducting rabies vaccine clinics at which dog owners could also purchase "wellness" vaccinations for their pets. The Association claimed the County's actions went beyond its statutory and constitutional authority and that the County violated various

statutes by unfairly competing with private veterinarians. After a three-day trial, the court found the Association's claims to be without merit.

On appeal, the Association contends the court erred by failing to determine the County exceeded its constitutional authority by offering dog wellness vaccinations at its rabies clinics. We reject the Association's contentions and affirm the judgment.

## SUMMARY OF RELEVANT FACTS AND PROCEDURE

In June 2001, the County scheduled three dog vaccination clinics to be held in Escondido, Poway, and Santee. At these clinics, the County intended to (1) sell one-year and three-year dog licenses; (2) offer rabies vaccinations at actual cost ($5.00); (3) offer a free rabies vaccination if the dog owner purchased a three-year license; and (4) offer for $15.00 a single vaccination that protects against four canine diseases: distemper, hepatitis, parvo, and parainfluenza (referred to as the "wellness vaccination").

The day before the first scheduled clinic, the Association, an organization of 435 private veterinarians, filed a complaint against the County, alleging the County had no authority to offer the free rabies vaccinations or the wellness vaccinations, and that the proposed public clinics constituted an unfair business practice (Bus. & Prof. Code, § 17200 et seq.) and violated the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.).

After the court denied the Association's request for temporary relief, the County held the first clinic in Escondido. At that clinic, the County (1) sold dog licenses; (2) offered $5.00 rabies vaccinations; (3) offered free rabies shots for owners who purchased three-year licenses; and (4) offered $15.00 wellness vaccinations. The rabies and wellness vaccinations were given by licensed veterinarians, who—pursuant to professional requirements—would briefly examine the dog and/or question the owner to ensure the vaccination would be appropriate for the dog's physical condition. At the other two clinics held in Santee and Poway later that month, the County offered each of these services except for the wellness vaccinations.

The County thereafter had no plans to provide the challenged free rabies vaccinations or the wellness vaccinations at additional public clinics. But the Association nonetheless continued pursuing its lawsuit seeking declaratory relief because the County was unwilling to state that it would never in the future include these services at its clinics.

In June 2002, a three-day court trial was held. At the trial, the Association presented evidence that the diseases protected by the wellness vaccination

were not transferable to humans. Based on this evidence, the Association argued the wellness vaccinations were not related to the protection of human health, and therefore the County acted beyond its legitimate governmental authority in offering these vaccinations. The Association also called as witnesses numerous private veterinarians who testified that the public vaccination clinics could have a detrimental effect on his or her business and/or criticized the County for failing to support efforts to increase private vaccination/license services. The Association additionally presented evidence to support its claims under the Unfair Competition Law and the Uniform Trade Secrets Act that the County's vaccination clinics unfairly competed with local veterinary practices and the County improperly used private information to advertise the clinics.[1]

In defense, the County acknowledged that the wellness vaccinations did not protect against diseases that were transferable to humans, but argued it nonetheless had the authority to offer the wellness vaccinations because the vaccinations benefited the public in other ways. In particular, the County relied on evidence showing the County is required to bear costs to treat animals in its public animal shelters that are infected with distemper, hepatitis, parvo and parainfluenza, and argued that to reduce these costs, the County had a legitimate governmental interest in ensuring that all dogs receive a vaccination to protect against these diseases. The County also presented evidence showing that offering free rabies vaccinations and $15.00 wellness vaccinations together at the public clinics would encourage dog owners to attend the clinics and purchase licenses, which would promote various public interests, including: (1) increased identification of dogs and their owners; (2) increased rabies vaccination compliance; and (3) raising additional funds to offset public animal control costs to cities.[2]

After taking the matter under submission, the court ruled in the County's favor. The court found the County's actions were a valid exercise of its police power authority because "[s]ick infected dogs received in shelters, with or without a manifestation of symptoms, infect other animals and impact a broader community. The fact the County bundles services to the public to increase, if possible, the public's use of its services for rabies shots does not negate the valid police power authority under which the services are being provided." The court also rejected Association's statutory claims, finding the County was not subject to suit under the Unfair Competition Law (see Bus. & Prof. Code, §§ 17043, 17044) and the County's use of licensing and rabies

---

[1] Although much of the Association's evidence at trial pertained to these statutory claims, we do not discuss this evidence because the Association does not challenge the trial court's findings on those causes of action.

[2] The County contracts to provide animal control services to nine cities, including Escondido, Poway and Santee. The amounts owed by each city for these services are offset by the license and other fees paid by dog owners in each particular city.

vaccine information to notify the public of the public vaccination clinics did not violate the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.).

Association appeals.

## DISCUSSION

### I.  *Applicable County Statutory and Constitutional Powers*

█  Cities and counties have broad powers to regulate and control dogs within the boundaries of their jurisdictions. (Health & Saf. Code, § 121695)[3] In delegating this authority, the Legislature stated that cities and counties in rabies-designated areas (which includes San Diego County) are responsible for ensuring that dog owners secure a dog license and obtain yearly rabies vaccinations for their dogs. (§ 121690, subds. (a) & (b).) To promote compliance, the Legislature provided that the local public entities "*shall . . . provide . . . or arrange for . . . dog vaccination . . . clinics*" throughout their jurisdictions. (§ 121690, subd. (f), italics added.) At these mandated vaccination clinics, the local entities may combine licensing and vaccination procedures "as a single operation." (*Ibid.*) Additionally, "[n]o charge in excess of the actual cost shall be made for any one vaccination at a [public] clinic. No owner of a dog shall be required to have his or her dog vaccinated at a public clinic if the owner elects to have the dog vaccinated by a licensed veterinarian of the owner's choice. [¶] All public clinics shall be required to operate under antiseptic immunization conditions comparable to those used in the vaccination of human beings." (*Ibid.*)  █  The Legislature further made clear that a local entity's authority to *regulate and control dogs within its boundaries* should be construed broadly, and that a city or county may "enact more stringent requirements" than are mandated under the relevant statutes. (§ 121695.)

█  In addition to these statutory powers, a county has expansive constitutional police power authority to act in the public interest in regulating domestic animal populations. (See *Simpson v. City of Los Angeles* (1953) 40 Cal.2d 271, 279–280 [253 P.2d 464].) California Constitution, article XI, section 7, provides that a county "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (See *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) Under this police power, "counties . . . have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law." (*Ibid.*; see *Personal Watercraft*

---

[3] All further statutory references are to the Health and Safety Code.

*Coalition v. Marin County Bd. of Supervisors* (2002) 100 Cal.App.4th 129, 146 [122 Cal.Rptr.2d 425]; *Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109, 1118 [67 Cal.Rptr.2d 420].) A county may use its police powers to do " 'whatever will promote the peace, comfort, convenience, and prosperity' of [its] citizens . . . , [and these powers] should 'not be lightly limited.' " (*Waste Resource Technologies v. Department of Public Health* (1994) 23 Cal.App.4th 299, 310 [28 Cal.Rptr.2d 422].) Thus, a county's constitutional authority to engage in a challenged activity will generally "be upheld if 'it is reasonably related to promoting the public health, safety, comfort, and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. [Citations.]' " (*Sunset Amusement Co. v. Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 [101 Cal.Rptr. 768, 496 P.2d 840].) When a county's action "is challenged as not being a valid exercise of police power, all presumptions favor its validity, and it will be upheld unless its unconstitutionality clearly and unmistakably appears." (*Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 206 [56 Cal.Rptr.2d 732].)

## II.   *Constitutional Analysis*[4]

The Association acknowledges that the rabies vaccinations given at the County's clinics are within the County's police power authority because rabies is a danger to human health and thus the prevention of rabies is related to the legitimate governmental objective of protecting human health. But the Association contends that the County's offering services unrelated to rabies vaccinations (i.e., the wellness vaccinations) was beyond the County's constitutional authority because these services did not have a "public health purpose." In the Association's words, "[Association] is not contesting the validity of rabies vaccinations that prevent the communication of disease to humans, but merely the giving of those vaccines for diseases that are communicable only amongst dogs."

However, the underlying premise of the Association's argument—that the County may act only to protect human health—is too narrow. Although the diseases prevented by the wellness vaccinations do not affect human health, they have a potential detrimental effect on animal control costs, a matter of legitimate county concern. As established by the evidence presented at trial, when a dog with one of the four diseases protected by the wellness

---

[4] In its opening appellate brief, the Association focuses solely on its constitutional arguments, and does not challenge the County's statutory authority to offer the wellness vaccinations. To the extent that the Association attempts to raise a statutory challenge to the wellness vaccinations in its reply briefs, these arguments are waived. In any event, any such argument is without merit. The Legislature's broad delegation of authority in this area supports a conclusion that the wellness vaccinations were authorized under the relevant statutes.

vaccination is brought to an animal shelter, the County is forced to pay for medical care, including possible euthanasia costs, for the diseased dog and for the dogs infected by the diseased animal. The Association argues that this justification for the wellness vaccination is "flawed" because its witness testified the chance of outbreak from a dog infected with such diseases was "very small." However, other evidence showed that the potential for infected animals coming into the clinics and the cost associated with these animals was a significant concern to the County. The court, as a trier of fact, was entitled to find the County's evidence credible. Further, when viewing the constitutionality of a public entity's action, the courts focus on whether the justification for the action is reasonable and not on the wisdom or efficacy of the particular policy to achieve the stated objectives. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 159 [130 Cal.Rptr. 465, 550 P.2d 1001].)

The County also presented evidence showing that by offering the wellness vaccine in addition to the rabies vaccine at the public clinics, pet owners would be encouraged to bring their dogs to the clinics and obtain the necessary rabies vaccinations and licenses. Ensuring that the greatest number of dogs will be identified, licensed, and vaccinated for rabies is a legitimate governmental activity. The County had a reasonable basis to conclude that the bundling of services—i.e., providing rabies and wellness vaccinations—would assist in promoting this goal. Further, the County's goal of obtaining additional revenues by increasing the number of licenses purchased was a legitimate exercise of its police powers. (See *Community Memorial Hospital v. County of Ventura, supra,* 50 Cal.App.4th at pp. 206–207.)

In arguing there is no reasonable nexus between the wellness vaccinations and a legitimate public interest, the Association relies on a 1917 case concerning a city's ownership of a cement plant (*City of Los Angeles v. Lewis* (1917) 175 Cal. 777 [167 P. 390]) and a 1925 case concerning a county's sale of poisoned barley (*Farley v. Stirling* (1925) 70 Cal.App. 526 [233 P. 810]). Neither of these decisions supports the Association's position in this case.

In *City of Los Angeles,* the court held unconstitutional a law permitting the city to own and operate a cement plant because the city failed to identify any "public purpose" for a city-operated cement plant other than as a profit-making venture for private gain. (*City of Los Angeles v. Lewis, supra,* 175 Cal. at pp. 780–784.) In so holding, the court noted that although a public entity may engage in a business-type enterprise, the "primary and principal purpose" of the enterprise must be a public one. (*Id.* at p. 781.)

In *Farley,* the court rejected a constitutional challenge to a county's plan to sell poisoned barley to consumers to be used in the extermination of ground squirrels. (*Farley v. Stirling, supra,* 70 Cal.App. at pp. 527–528.) The court

reasoned that, unlike in *City of Los Angeles,* "financial profit to the county was not, in fact, its object or result. It was a measure adopted for the purpose of protecting the health of the people of the county and to prevent injury and destruction to their property from an existing evil [the squirrels] . . . ." (*Farley, supra,* 70 Cal.App. at p. 530.) The court emphasized that the county would not earn a profit from the sale of the poisoned barley and that the public did not have the ability to eradicate the squirrel problem without governmental involvement. (*Id.* at pp. 529–530.)

■ *City of Los Angeles* and *Farley* stand for the proposition that although a county may not operate a business solely for the purpose of earning a profit, a county acts within its police powers if the primary object of the enterprise is to promote the health, safety, and/or welfare of the general public. (*City of Los Angeles v. Lewis, supra,* 175 Cal. at p. 781; *Farley v. Stirling, supra,* 70 Cal.App. at pp. 527–530; see *Community Memorial Hospital v. County of Ventura, supra,* 50 Cal.App.4th at pp. 206–207.) This is precisely the principle we have applied in this case. We have concluded that the County acted within its police powers to sell wellness vaccinations at its statutorily mandated vaccination clinics for the purpose of lowering potential animal control costs and increasing the licensing and rabies vaccinations in the dog population. Although each of the factors identified in *Farley* is not necessarily present in this case, there was nothing in that decision suggesting that these factors were essential to upholding a public entity's action. To the contrary, the *Farley* court made clear that the scope of a local entity's police powers "depend[s] largely upon the circumstances of each case." (*Farley, supra,* 70 Cal.App. at p. 531.)

■ The Association argues that the County's primary objective in offering the wellness vaccinations was to earn a profit and therefore the vaccinations were beyond its police powers. However, the evidence showed that the funds earned at the challenged clinics were primarily from the license fees, which the dog owners were already mandated to pay under state law. These fees were used to reduce each city's costs for animal control services, and did not result in a "profit" to any public agency. Further, there was no evidence presented at trial that the County's purpose in charging for the wellness vaccinations was to raise revenue, or even that the wellness vaccinations actually raised funds for the County. In fact, the undisputed evidence showed the County charged a fee for the wellness vaccination solely in response to the Association's demand that the vaccinations not be offered for free. The Association is thus not in a position to suggest that the County's purpose in charging for the wellness vaccination was to earn profits. Moreover, even if the wellness vaccinations earned funds for the County to offset other animal control costs, this fact does not make the vaccinations unconstitutional. If animal regulation and control is within the County's legitimate police powers, "raising money to accomplish that purpose is also within

the County's police powers. That the County chooses to raise money by [charging for wellness vaccinations] rather than through increased taxes or from some other source is not for the courts to question." (*Community Memorial Hospital v. County of Ventura, supra,* 50 Cal.App.4th at p. 207.)

■ The Association additionally suggests the County's exercise of its police power to offer the wellness vaccinations was improper because it had the effect of competing with private veterinary businesses. However, there was no evidence to show the sale of the wellness vaccinations had any adverse effect on private veterinary business. But more important, the Association's argument reflects a misunderstanding of applicable constitutional principles. " '[T]he very essence of the police power . . . is that the deprivation of individual rights and property cannot prevent its operation. . . .' " (*Waste Resource Technologies v. Department of Public Health, supra,* 23 Cal.App.4th at p. 311 [28 Cal.Rptr.2d 422], quoting *Beverly Oil Co. v. City of Los Angeles* (1953) 40 Cal.2d 552, 557 [254 P.2d 865].) Thus, the fact that a governmental service may decrease the demand for a comparable private service does not show the governmental entity acted outside its constitutional authority. (See *Community Memorial Hospital v. County of Ventura, supra,* 50 Cal.App.4th at pp. 206–207.)

The Association alternatively argues that even if the County had the authority to offer the challenged vaccinations at its clinics, it exceeded this authority by providing these services to all dog owners regardless of the individual's ability to pay a private veterinarian. In support of this argument, the Association relies on *Goodall v. Brite* (1936) 11 Cal.App.2d 540 [54 P.2d 510], in which the court held unconstitutional a county hospital's practice of providing free care to all county residents even though a resident had the ability to pay for private hospital services and private area hospitals were willing to take paying patients. (*Id.* at pp. 542–545.) The *Goodall* court found that the policy of free medical care exceeded the county's authority because the only identified purpose was to "preserv[e] . . . private resources." (*Id.* at p. 547.) More recently, in *Community Memorial Hospital v. County of Ventura, supra,* 50 Cal.App.4th 199, the court held the county acted within its police powers in accepting paying patients at its public hospital to defray the cost of treating the indigent, even if the patients could afford to pay higher prices at private hospitals and even if the policy had the effect of decreasing the demand for services at the private hospitals. (*Id.* at pp. 206–207.) Distinguishing *Goodall,* the court stated that the purpose of the county's policy was to finance health care for the indigent population, rather than to merely "preserve private resources." (*Community Memorial Hospital, supra,* 50 Cal.App.4th at p. 207.)

As in *Community Memorial Hospital,* the County's purpose of providing the wellness vaccinations was not to save money for those who did not wish

to pay private fees. Instead, the evidence showed the objective was to further the public welfare by defraying animal control costs, promoting the purchase of dog licenses and rabies vaccinations, and offsetting public animal control costs. Thus, *Goodall* is inapplicable here. Under the circumstances of this case, there was nothing improper about the County providing vaccinations at its public clinics regardless of an individual's ability to pay for the services.

Finally, we reject the Association's argument that the judgment in this case provides "blanket approval for the [County] to provide veterinary medical services in competition with [private] veterinarians . . . ." The issue before the trial court, as it is before this court, is whether, at one of the County's statutorily mandated rabies vaccination clinics, the County acted within its authority to sell a $15.00 wellness shot for the purposes of promoting dog health, reducing expenses at dog shelters, encouraging dog owners to bring their dogs to the rabies clinics, and encouraging dog owners to buy required dog licenses. The question whether the County could go beyond this limited activity and operate and maintain a full-service veterinary office is not before us.

## DISPOSITION

Judgment affirmed. Association to pay County's costs on appeal.

Huffman, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied April 8, 2004, and appellant's petition for review by the Supreme Court was denied June 9, 2004.