[No. B218003. Second Dist., Div. One. Apr. 29, 2011.]

CONCERNED DOG OWNERS OF CALIFORNIA et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

1220

1224

**COUNSEL**

Law Offices of John Michael Jensen and John Michael Jensen for Plaintiffs and Appellants.

Carmen A. Trutanich, City Attorney, Laurie Rittenberg, Assistant City Attorney, Casey Chon and Todd Leung, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—In 2008, the City of Los Angeles (City) passed an ordinance amending section 53.15.2 of the Los Angeles Municipal Code (Ordinance) to require all dogs and cats within the City to be spayed or neutered unless one of the listed exemptions is met. The City adopted the Ordinance with the intent of controlling the rising pet population in the City.

Plaintiffs Concerned Dog Owners of California, Cathie Turner, Dana Bleifer, DVM, and Vardui Khorikyan (collectively CDOC) filed a motion for declaratory and injunctive relief against the City seeking to invalidate the Ordinance, contending that the Ordinance violates various aspects of the state and federal Constitutions. The trial court denied relief, finding that the Ordinance was a valid exercise of the City's police power and that no constitutional rights were implicated by its provisions.

■ We hold the Ordinance constitutes a valid exercise of the City's police power and find no constitutional infirmity with any of its provisions. Accordingly, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In February 2008, the Los Angeles City Council amended section 53.15.2 of the Los Angeles Municipal Code.[1] The amended provision requires the owner of a dog or cat in the City of Los Angeles to spay or neuter the animal unless one of six exemptions is satisfied.

Specific exemptions are provided for owners who obtained a breeder permit for the animal. Furthermore, five additional exemptions were provided: (1) certain breeds of animals which are trained and groomed to participate in shows or competitions; (2) dogs which are used for carting, herding, protection, hunting, working, etc.; (3) trained guide or service dogs; (4) dogs used for law enforcement, military, or rescue purposes; and (5) animals which would suffer adverse health effects from the spay or neuter procedure. (§ 53.15.2, subd. (b)(2).) If the owner of the animal qualifies for one of the exemptions, the animal must be implanted with an identification chip identifying the owner. (§ 53.15.2, subd. (b)(3).)

The law was passed in response to the City's growing concern over pet overpopulation. The city council enumerated several issues related to the overpopulation problem including public health and safety concerns, inhumane treatment of animals, mass euthanasia of dogs/cats at local shelters, and rising costs for animal control. In accordance with committee reports regarding the issue, the city council concluded that imposing a requirement on pet owners to spay and neuter dogs and cats over the age of four months would help alleviate the issue.

On July 26, 2007, Edward A. Boks, the general manager of the City's department of animal services issued a report to the city council requesting the city attorney to draft an ordinance to allow the sterilization of animals taken in by the City and to draft language to strengthen breeding and transfer regulations. A report issued by the city controller in August 2008 estimated the number of unaltered cats and dogs in the City to be approximately 500,000. The same report noted that in 2007 and 2008, Los Angeles took in 47,427 stray cats and dogs. A separate statistical report based on the City's animal services states that in 2007 the City adopted out 16,262 cats and dogs,

---

[1] All further section references are to the Los Angeles Municipal Code unless otherwise indicated.

which was approximately 34% of the City's intake. The same report indicates that in 2006, 19,238 dogs and cats were euthanized and in 2007, 15,009 dogs and cats were euthanized.

The purpose of the permit requirement was to reduce the number of unwanted animals being born. However, not all persons who do not want to spay or neuter their animals intend to breed them. Plaintiff Cathie Turner, for example, has dogs she does not want to spay or neuter, but the Ordinance would require her to do so, or else obtain a breeder's permit. One reason persons such as plaintiffs do not wish to spay or neuter their pets is the health risks involved.

The Ordinance was set to take effect beginning on October 1, 2008. In April 2008, CDOC filed a complaint challenging the constitutionality of the Ordinance. The complaint advanced 16 distinct causes of action, alleging numerous constitutional defects and requesting injunctive relief and a writ of mandate directing the City to vacate the Ordinance. On September 8, 2008, CDOC filed a motion for preliminary injunction to suspend the enforcement of the Ordinance. CDOC also filed an ex parte application for a temporary restraining order on September 25, 2008, to postpone the enforcement of the Ordinance until the trial court ruled on the preliminary injunction motion. The application was denied. On October 2, 2008, the trial court denied the motion for preliminary injunction.

CDOC argued in support of its petition that the provisions contained in the Ordinance are invalid. CDOC first contended that the Ordinance violates various aspects of the First Amendment. Specifically, the Ordinance compels speech by requiring a "breeder's permit" and thereby designating those owners as "breeders," a term which, according to plaintiff CDOC has become a politicized term. CDOC further argued that the Ordinance violates the right to free association by requiring a pet owner to join a registry, publically adopt the term "breeder," or have the animal sterilized. Moreover, CDOC contended the overbreadth and vagueness of the Ordinance rendered the law void in the First Amendment context.

CDOC also argued that the Ordinance violates equal protection by discriminating against those pet owners who do not satisfy one of the enumerated exemptions provided by the City. Furthermore, the law also discriminates against owners of mixed breed dogs as some of the exemptions apply only to pure breeds. Moreover, CDOC claimed that the Ordinance fails both rational basis and strict scrutiny because it is arbitrary and does not achieve its stated purpose. Finally, CDOC argued the Ordinance violates procedural due process and the takings clause, and asserted that the provisions in the Ordinance violate the Tenth Amendment police powers by exceeding the circumscribed authority granted to cities and municipalities.

In reply, the City argued that in accordance with the California Constitution and relevant health and safety codes, the Ordinance falls within the City's police power to regulate the ownership of animals and is reasonably related to the stated objective. Furthermore, the City contended that the Ordinance does not compel private speech and any government speech associated with the provision is not regulated by the First Amendment. The City also argued that the Ordinance is neither overbroad nor vague such as to violate due process, and that the equal protection claim failed for lack of merit.

Subsequently, on July 14, 2008, the trial court denied CDOC's petition for writ of mandate. In ruling on the petition, the court relied partly on *American Canine Foundation v. Sun*, an unpublished opinion from the United States District Court for the Northern District of California. (*American Canine Foundation v. Sun* (N.D.Cal., Nov. 27, 2007, C-06-4713 MMC) 2007 WL 4208358.) *American Canine* involved a similar spay and neuter ordinance which applied to dogs and it was upheld as a constitutionally valid regulatory measure. Likewise, the trial court found that the Ordinance fell within the ambit of the City's police powers, that free speech rights were not implicated because there is no constitutional right to maintain pets, and that all other arguments lacked merit. On July 31, 2009, the trial court denied CDOC's requested relief. Subsequently, CDOC filed this appeal.

## DISCUSSION

CDOC argues that the Ordinance is constitutionally invalid because it (1) violates freedom of speech; (2) violates freedom of association by compelling association; (3) is overbroad and vague; (4) violates equal protection; (5) violates due process and the takings clause; (6) grants unfettered discretion; (7) violates Tenth Amendment police powers; and (8) violates individual liberties under the California Constitution. We conclude the Ordinance is a valid exercise of the City's police power and does not violate the California or federal Constitutions.

### I. Standard of Review

In mandamus actions, we perform essentially the same function as the trial court in determining whether the City's action was arbitrary or palpably unreasonable. (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 [84 Cal.Rptr.2d 179].) " 'On questions of law arising in mandate proceedings, we exercise independent judgment.' " (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313 [45 Cal.Rptr.3d 511].) We defer to the trial court's factual findings if supported by substantial evidence. (*Kavanaugh v. West Sonoma County Union High*

*School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].) The constitutionality of the Ordinance is a question of law subject to independent review. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 [53 Cal.Rptr.3d 216].)

## II. *First Amendment*

### A. *Free Speech*

CDOC contends that the Ordinance constitutes a content-based restriction on protected speech by endorsing an antihunting ideology, and compelling speech by applying the "breeder" designation upon individuals who obtain a breeding permit pursuant to section 53.15.2, subdivision (b)(2)(F) and forcing compliance with the exemptions.

■ The Supreme Court has only entertained facial freedom-of-expression challenges to legislation that, by its terms, seeks to regulate spoken words or patently expressive conduct such as picketing or handbilling. (*Roulette v. City of Seattle* (9th Cir. 1996) 97 F.3d 300, 303.) The Supreme Court has ruled that First Amendment protection is only afforded to conduct that is inherently expressive. (*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (2006) 547 U.S. 47, 66 [164 L.Ed.2d 156, 126 S.Ct. 1297]; *Texas v. Johnson* (1989) 491 U.S. 397, 419–420 [105 L.Ed.2d 342, 109 S.Ct. 2533]; [burning the American flag held to be expressive conduct]; *Eagon Through Eagon v. City of Elk City, Oklahoma* (10th Cir. 1996) 72 F.3d 1480, 1485–1488 [carrying a sign in a public park is expressive conduct subject to 1st Amend. protection].)

■ " 'For purposes of the free speech clause, simple obedience to a law that does not require one to convey a verbal or symbolic message cannot reasonably be seen as a statement of support for the law or its purpose. Such a rule would, in effect, permit each individual to choose which laws he would obey merely by declaring his agreement or opposition.' " (*North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1157 [81 Cal.Rptr.3d 708, 189 P.3d 959].) " 'The [First] Amendment should be interpreted so as not to cripple the regular work of the government.' " (*Columbia Broadcasting v. Democratic Comm.* (1973) 412 U.S. 94, 103 [36 L.Ed.2d 772, 93 S.Ct. 2080].)

A city ordinance prohibiting smoking in enclosed public locations did not violate a bar owner's First Amendment right not to speak because the purpose of the ordinance was to promote the health and safety of the city's population from the harmful side effects of secondhand smoke. (*Roark & Hardee LP v. City of Austin* (5th Cir. 2008) 522 F.3d 533, 549–550.) In order to accomplish

the stated purpose the ordinance required bar owners to take any necessary steps to prevent patrons from smoking, therefore, the ordinance regulated conduct and not speech; the bar owners were free to express any views they had about the ordinance. (*Id.* at p. 550.)

Here too, the Ordinance regulates conduct not speech. Moreover, the regulated conduct involves sterilizing an animal, which is neither integral to, nor commonly associated with, expression. The First Amendment does not extend to conduct which cannot reasonably be interpreted to be expressive in nature. The Ordinance does not require any individual to convey any verbal or symbolic statement.

CDOC asserts that individuals who purchase a "breeding permit" are designated as "breeders," which is purportedly a stigmatized label. The argument is baseless: by comparison, for instance, obtaining a piloting license does not designate a person as a "pilot," it simply permits a person to legally pilot an airplane. Moreover, the breeding exemption (§ 53.15.2, subd. (b)(2)(F)) does not require an individual to actually breed the animal, it simply permits the animal to remain unaltered. The Ordinance, by its terms, does not designate anyone as a "breeder," and any contention to the contrary is a subjective interpretation.

Furthermore, CDOC's "compelled subsidy" argument regarding the requirement to pay fees to exempt registries and associations lacks any evidentiary support. There is no provision in the Ordinance that requires an owner of a dog or cat to pay any fee or monetary subsidy to a registry or association. The Ordinance is a legitimate regulation of nonexpressive conduct and does not prohibit nor compel any speech or expression.

B. *Free Association*

CDOC alleges that the Ordinance violates the right to freedom of association guaranteed under the First Amendment by requiring conformity with one of the exemptions. More specifically, CDOC argues that the Ordinance effectively violates the right to freely associate by requiring owners of unaltered pets to join a registry, adopt the term "breeder," own a dog that is specially trained, or have the animal sterilized.

█ The First Amendment guarantees the freedom of association and by extension the freedom from coerced association with particular groups. (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 623 [82 L.Ed.2d 462, 104 S.Ct. 3244].) People have a constitutionally protected right to not associate with any group. (*Besig v. Dolphin Boating and Swimming Club* (9th Cir. 1982) 683 F.2d 1271, 1275.) The right to associate freely and be free

from compelled association exists where the activity underlying the association is itself protected by the freedom of expression under the First Amendment. (*Willis v. Town of Marshall, N.C.* (4th Cir. 2005) 426 F.3d 251, 258.) Freedom of association is constitutionally protected "so that other activities imbedded in the First Amendment might be fully safeguarded and allowed to flourish." (*Eccles v. Nelson* (Fla.Dist.Ct.App. 2006) 919 So.2d 658, 661.)

The only mandatory requirement under the Ordinance is to spay and neuter one's dog or cat. As discussed above, such activity is not expressive in nature and as such it does not fall under the ambit of the First Amendment. CDOC's contention that owners of unaltered pets are required to comply with one of the exemptions appears to be predicated upon the spurious notion that an individual has a constitutional right to keep his dog or cat unaltered. Clearly, no such right exists, and none of the provisions in the Ordinance require compliance with any of the exemptions. The Ordinance does not implicate any freedom of association protections.

## C. *Overbreadth*

██ Under the First Amendment overbreadth doctrine, "[an ordinance] is facially invalid if it prohibits a substantial amount of protected speech." (*United States v. Williams* (2008) 553 U.S. 285, 292 [170 L.Ed.2d 650, 128 S.Ct. 1830].) "[W]e have vigorously enforced the requirement that [an ordinance]'s overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." (*Ibid.*)

As discussed above, the regulatory measures enacted in the Ordinance do not prohibit any form of constitutionally protected speech or expression. However, relying on *United States v. Stevens* (2010) 559 U.S. ___ [176 L.Ed.2d 435, 130 S.Ct. 1577], CDOC argues the exceptions in the Ordinance do not save it from an overbreadth challenge. In *Stevens*, the Supreme Court found the statute at issue was overbroad. The statute criminalized the commercial creation, sale, or possession of depictions of animal cruelty, but did not necessarily require the depicted conduct to be cruel. The statute excepted depictions with serious religious, political, scientific, educational, journalistic, historical, or artistic value. (*United States v. Stevens, supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1588].) In *Stevens*, the Government argued that the exceptions clause substantially narrowed the statute's reach by permitting material deemed to be of certain value (historical, religious, educational, etc.). The court found the exceptions clause was inadequate to properly limit the statute's restriction on free speech. (559 U.S. at pp. ___–___ [130 S.Ct. at pp. 1590–1591].) In contrast, here, the Ordinance does not limit or regulate any speech or expression, therefore CDOC's overbreadth argument invoking *Stevens* is inapposite.

## D. *Vagueness*

CDOC argues that the Ordinance is unconstitutionally vague. They contend that the "breeding permit" exemption (§ 53.15.2, subd. (b)(2)(F)) is vague on the grounds that it applies both to individuals who intend to breed the animal and to those who simply wish to keep the animal intact. Additionally, they implicitly claim that select phrasing contained in the "show dog" exemption is ambiguous, specifically the phrase "the dog or cat is actively used to show or compete and has competed in at least one show or sporting competition hosted by or under the approval of the recognized registry or association within the last two years, or is being trained or groomed to show or compete and is too young to have yet competed." (§ 53.15.2, subd. (b)(2)(A).)

■ Statutes or ordinances that are not clear as to the regulated conduct are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 92 S.Ct. 2294].)

As to the first two applications, the Fourteenth Amendment due process guarantee against vagueness requires that laws provide adequate warning to people of ordinary intelligence of the conduct that is prohibited, and standards to protect against arbitrary and discriminatory enforcement. (*Kolender v. Lawson* (1983) 461 U.S. 352, 357–358 [75 L.Ed.2d 903, 103 S.Ct. 1855].) Although the Constitution guarantees against vague and insufficiently clear laws, it does not require the language of an ordinance be mathematically precise. (*Grayned v. City of Rockford, supra,* 408 U.S. at p. 110; *Miller v. California* (1973) 413 U.S. 15, 28 [37 L.Ed.2d 419, 93 S.Ct. 2607].) A party that challenges the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment faces a heavy burden: they must "demonstrate that 'the enactment is impermissibly vague in all of its applications.' " (*Hotel & Motel Assn. of Oakland v. City of Oakland* (9th Cir. 2003) 344 F.3d 959, 972.) Facial challenges are considered " 'manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.' " (*California Teachers Assn. v. State Bd. of Education* (9th Cir. 2001) 271 F.3d 1141, 1155.) Courts are particularly reluctant to find a statute vague on its face where a regulated entity can "clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." (*Hoffman Estates v. Flipside, Hoffman Estates* (1982) 455 U.S. 489, 498 [71 L.Ed.2d 362, 102 S.Ct. 1186].)

■ The third application of constitutional vagueness applies when an ordinance "clearly implicates free speech rights," and in such cases it will

survive a facial challenge so long as "it is clear what the statute proscribes 'in the vast majority of its intended applications.' " (*California Teachers Assn. v. State Bd. of Education, supra,* 271 F.3d 1141, 1149, 1151.) In such instances heightened vagueness scrutiny is triggered where the "challenged statute regulates and potentially chills speech which, in the absence of any regulation, receives some First Amendment protection." (*Id.* at p. 1150, italics omitted.)

■ In *California Teachers,* the plaintiff argued that a voter-approved initiative was facially vague because it required school teachers to " 'overwhelmingly' " speak English during a majority of class instruction. The Ninth Circuit recognized the lack of preciseness in the initiative's provisions; however, the court held: "Undoubtedly, there will be situations at the margins where it is not clear whether a teacher is providing instruction and presenting the curriculum. In these situations, where legitimate uncertainty exists, teachers may feel compelled to speak in English and may forgo some amount of legitimate, non-English speech. The touchstone of a facial vagueness challenge in the First Amendment context, however, is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." (*California Teachers Assn. v. State Bd. of Education, supra,* 271 F.3d at p. 1152.)

■ Here, CDOC contends that certain aspects of the Ordinance render it unconstitutionally vague. First, they argue that the breeding permit exemption in section 53.15.2, subdivision (c) causes confusion because it is intended to apply both to individuals who intend to breed their dog or cat as well as those who do not but would nevertheless like to keep the animal unaltered. Furthermore, CDOC implies that the phrasing in section 53.15.2, subdivision (b)(2)(A) is also unclear, specifically the part that reads: "actively used to show or compete . . . or is being trained . . . to show or compete." (§ 53.15.2, subd. (b)(2)(A).) Although CDOC frames the vagueness challenge under the third application of constitutional vagueness, arguing free speech rights are implicated due to the vagueness, they do not present any evidence, nor do we find any, to suggest how speech or expression may be limited. Accordingly, we will review the purported deficiencies under the Fourteenth Amendment due process guarantee against vagueness, which requires the law to provide adequate notice to people of ordinary intelligence of the conduct that is prohibited and standards to protect against arbitrary enforcement. (*Kolender v. Lawson, supra,* 461 U.S. at pp. 357–358.)

We find no ambiguity in either of the alleged inconsistencies which CDOC posits. For instance, the phrase "actively used to show or compete" cannot

conceivably cause any confusion in a person of ordinary intelligence. Moreover, CDOC does not assert that the Ordinance is vague in all of its applications, nor can they. We find no provision in Ordinance to support a vagueness challenge.

## III. *Equal Protection*

CDOC contends that the Ordinance violates equal protection by discriminating against owners of unaltered pets who do not satisfy one of the exemptions in favor of owners of unaltered pets who do satisfy an exemption. Equal protection of the laws requires that people who are similarly situated with respect to the legitimate purpose of the law receive like treatment. (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645]; *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1487 [1 Cal.Rptr.3d 185].) " '[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.* [Citations.] Where there are "plausible reasons" for [the classification] "our inquiry is at an end." ' " (*Warden v. State Bar* (1999) 21 Cal.4th 628, 644 [88 Cal.Rptr.2d 283, 982 P.2d 154], quoting *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307 [41 L.Ed. 1169, 17 S.Ct. 693].)

Furthermore, the United States Supreme Court has held that legislation may be based on rational speculation and the government need not present any evidentiary support or empirical data. (*FCC v. Beach Communications, Inc., supra*, 508 U.S. at p. 315.) The appellants carry the burden to " 'negative every conceivable basis which might support it.' " (*Ibid.*) Moreover, the United States Supreme Court has held that dogs are personal property and are subject to destruction and other appropriate government measures. (See *Sentell v. New Orleans &c. Railroad Co.* (1897) 166 U.S. 698, 704 [41 L.Ed. 1169, 17 S.Ct. 693].)

Here, CDOC does not attempt to argue that the Ordinance involves a suspect classification or a fundamental right. Accordingly, rational basis review applies. There is no need to speculate about the legislative intent behind the Ordinance because the City has articulated the purpose of the law: to control the pet overpopulation problem and promote the public health and safety. The underlying empirical evidence to support the Ordinance is irrelevant as it is not the province of this court to second-guess the decisionmaking process of the Legislature. The articulated reasoning for the Ordinance satisfies rational basis review and forecloses any equal protection argument.

IV. *Due Process and Fifth Amendment*

A. *Due Process.*

 CDOC argues that the Ordinance violates the scope of the City's police powers under the 10th Amendment. The California Supreme Court has established that "the licensing of dogs and the regulation of the manner in which they shall be kept and controlled are within the legitimate sphere of the police power." (*Simpson v. City of Los Angeles* (1953) 40 Cal.2d 271, 279 [253 P.2d 464].) Furthermore, the California Constitution states that so long as there is no conflict with state laws, a city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations." (Cal. Const., art. XI, § 7.)

It is purely within the discretion of the legislative body to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets. (*Sentell v. New Orleans &c. Railroad Co., supra,* 166 U.S. at p. 706.)

 Furthermore, Health and Safety Code section 121695 states that "a local entity's authority to regulate and control dogs within its boundaries should be construed broadly, and that a city or county may 'enact more stringent requirements' than are mandated under the relevant statutes." (*San Diego County Veterinary Medical Assn. v. County of San Diego* (2004) 116 Cal.App.4th 1129, 1134 [10 Cal.Rptr.3d 885]; see Health & Saf. Code, § 121695.) When local measures and ordinances are challenged for being in violation of prescribed police powers, "all presumptions favor its validity, and it will be upheld unless its unconstitutionality clearly and unmistakably appears." (*Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 206 [56 Cal.Rptr.2d 732].)

 A legislative body has the right to impose by ordinance restrictions on the rights of dog owners to allow their animals to run at large. (*Markus v. Justice's Court* (1953) 117 Cal.App.2d 391, 395 [255 P.2d 883].) A city ordinance that prohibited keeping more than three dogs within 250 feet of another house was upheld despite forcing the shutdown of kennels. (*Miller v. City of Arcadia* (1932) 121 Cal.App. 660, 662–663 [9 P.2d 587].)

In enacting the Ordinance, the City specifically noted its intent in the opening paragraph: "The City Council finds that there exists a serious pet overpopulation problem within the City, that has resulted in a threat to public safety and health . . . that uncontrolled breeding is the cause . . . [and] Council finds that part of the solution is for all dogs and cats over the age of four months to be spayed or neutered . . . ." (§ 53.15.2, par. 1.)

Plaintiffs argue that the Ordinance is an invalid exercise of the City's police powers because it is not rationally related to the City's objectives. The Ordinance is intended to reduce the pet population in the City and requiring pet owners to spay or neuter their cat or dog, barring an exemption, will result in fewer animals being born, ultimately reducing the pet population. As previously stated, the courts have recognized that dogs are considered personal property and it is within the proper jurisdiction of the Legislature to control and regulate the ownership of such animals. The Ordinance and its provisions fall squarely within the authority of legislative police power.

### B. *Fifth Amendment Takings Clause*

CDOC argues that by threatening to cause a pet to be altered without the owner's permission, the City threatens an unlawful "taking" and that "sterilization reduces the value of the dog or cat, as well as takes the property right of the ability to have future puppies or kittens."

The takings clause of the Fifth Amendment guarantees the right to not have personal property taken without just compensation. (*National City Business Assn. v. City of National City* (1983) 146 Cal.App.3d 1060, 1065 [194 Cal.Rptr. 707].) When government regulation deprives a property owner of all economically viable use, the owner is entitled to compensation, regardless of how significant the government's interest is in the regulation. (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015 [120 L.Ed.2d 798, 112 S.Ct. 2886].)

If the government's action is a regulatory measure which does not involve a physical invasion of the property or a taking of all economically viable use, then the owner is entitled to compensation only if he was singled out to bear a burden that ought to be imposed on the public as a whole. (*Yee v. Escondido* (1992) 503 U.S. 519, 522–523 [118 L.Ed.2d 153, 112 S.Ct. 1522].) When such a regulatory measure is challenged as an unconstitutional taking, the primary issue is whether there is a sufficient relationship between the effect of the regulation and the objective it seeks to accomplish. (*Ibid.*) Furthermore, within the context of regulatory measures challenged as unconstitutional takings, the imposition of monetary exactions, including broadly applicable fees, taxes, and special assessments, has been given substantial judicial deference. (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 671 [117 Cal.Rptr.2d 269, 41 P.3d 87].)

Here, the Ordinance constitutes a regulatory measure which requires all owners of cats and dogs to spay or neuter the animal or comply with one of the exemptions. The Ordinance does not permit the city to effectuate a

physical invasion or acquisition of the animals nor does it deprive owners of all economically viable use. Those individuals who do not wish to sterilize their dog or cat, for economic reasons or otherwise, may purchase a "breeding permit," pursuant to section 53.15.2, subdivision (b)(2)(F). Furthermore, there is a clear relationship between spaying and neutering dogs and cats, and the lowering of the animal population in the City.

CDOC's arguments are without merit and fail to address any of the considerations involved in an unconstitutional takings challenge. Courts have afforded considerable deference to such regulatory measures which impose monetary fees and assessments on the ownership of personal property. Accordingly, we find that the Ordinance does not pose any conflict with the takings clause.

## V. *Unfettered Discretion*

CDOC claims that the Ordinance is unconstitutional because it grants unfettered discretion to City officials to determine which registries and associations qualify under the exemptions. Any procedure which regulates expressive activity and confers unbounded discretion upon licensing officials in granting permits is constitutionally invalid because it permits them to base their determination on the content of the expression. (*Dillon v. Municipal Court* (1971) 4 Cal.3d 860, 869–870 [94 Cal.Rptr. 777, 484 P.2d 945].) "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." (*Shuttlesworth v. Birmingham* (1969) 394 U.S. 147, 150–151 [22 L.Ed.2d 162, 89 S.Ct. 935].) The prior-restraint rule in *Shuttlesworth* was designed to safeguard against the content-based, discriminatory enforcement of laws by officials who may use their unfettered discretion as a means of censoring a particular viewpoint. (*Ibid.*) The rule is generally applied to cases which involve censured forms of speech or expression, such as gay rights or antiwar parades. (*Long Beach Lesbian & Gay Pride, Inc. v. City of Long Beach* (1993) 14 Cal.App.4th 312, 325 [17 Cal.Rptr.2d 861]; *Dillon, supra,* 4 Cal.3d at p. 864.)

Here, the Ordinance supplies an exemption for certain breeds of dogs and cats which are "approved by and registered with a registry or association recognized by the Department through its Commission, whose program and practices are consistent with the humane treatment of animals." The provision confines the discretion of City officials to approve registries and association who abide by acceptable animal treatment standards. Although the discretion is broad in the determination of what constitutes "humane treatment," its scope is nevertheless limited in context. CDOC's unfettered discretion claim fails because certifying animal registries for exempt status

under the Ordinance lacks the requisite nexus to First Amendment speech or expression. Thus, there is no real or substantial threat of censorship. The provision does not vest unfettered discretion in City officials, and it is not an unconstitutional prior restraint on the content of any speech or expression sought to be conveyed.

## VI. *Tenth Amendment*

CDOC contends that the Ordinance violates the scope of the City's police powers under the Tenth Amendment. The California Supreme Court has established that "the licensing of dogs and the regulation of the manner in which they shall be kept and controlled are within the legitimate sphere of the police power." (*Simpson v. City of Los Angeles, supra*, 40 Cal.2d at p. 279.) The California Constitution states that so long as there is no conflict with state laws, a City "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations." (Cal. Const., art. XI, § 7.) Furthermore, Health and Safety Code section 121695 states that "a local entity's authority to regulate and control dogs within its boundaries should be construed broadly, and that a city or county may 'enact more stringent requirements' than are mandated under the relevant statutes." (*San Diego County Veterinary Medical Assn. v. County of San Diego, supra*, 116 Cal.App.4th at p. 1134; see Health & Saf. Code, § 121695.)

When local measures and ordinances are challenged for being in violation of prescribed police powers, "all presumptions favor its validity, and it will be upheld unless its unconstitutionality clearly and unmistakably appears." (*Community Memorial Hospital v. County of Ventura, supra*, 50 Cal.App.4th at p. 206.) A legislative body has the right to impose by ordinance restrictions on the rights of dog owners to allow their animals to run at large. (*Markus v. Justice's Court, supra*, 117 Cal.App.2d at p. 395.) A city ordinance that prohibited keeping more than three dogs within 250 feet of another house was upheld despite forcing the shutdown of kennels. (*Miller v. City of Arcadia, supra*, 121 Cal.App. at pp. 662–663.)

In enacting the Ordinance, the City specifically noted its intent in the opening paragraph: "The City Council finds that there exists a serious pet overpopulation problem within the City, that has resulted in a threat to public safety and health . . . that uncontrolled breeding is the cause . . . [and] Council finds that part of the solution is for all dogs and cats over the age of four months to be spayed or neutered . . . ." (§ 53.15.2, par. 1.)

CDOC contends that the Ordinance is an invalid exercise of the City's police powers because it is not rationally related to the City's objectives. The City relied on a number of reports which highlight numerous concerns

stemming from the overpopulation of pets in the City, including public health and safety, escalating costs of animal control, and mass euthanasia of abandoned animals. The Ordinance is intended to reduce the pet population in the City and requiring pet owners to spay or neuter their cats and dogs will result in fewer animals being born, ultimately reducing the pet population. The California Supreme Court in *Simpson* held that such regulation falls within the legitimate sphere of Tenth Amendment police powers. We find the City's means to be rationally related to its stated objective; accordingly the Ordinance is a valid exercise of the City's police power under the Tenth Amendment.

## VII. *Individual Liberties*

 CDOC argues that the Ordinance violates individual liberties protected under the California Constitution. (Cal. Const., art. I, § 1.) Constitutional guarantees of life, liberty, and property do not vest absolute in the individual; they are necessarily circumscribed by the requirements of public health and safety. (*In re Moffett* (1937) 19 Cal.App.2d 7, 14 [64 P.2d 1190]; *Graham v. Kingwell* (1933) 218 Cal. 658, 659 [24 P.2d 488]; *Patrick v. Riley* (1930) 209 Cal. 350, 354 [287 P. 455].) There is no constitutional right to possess property free from government regulation. (*Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 458 [55 P.2d 177].)

Property interests in dogs are limited; it is within the discretion of the legislative body to determine to what extent they are recognized as property. (*Sentell v. New Orleans &c. Railroad Co., supra*, 166 U.S. at p. 701.) Moreover, the Supreme Court unequivocally held that "[e]ven if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the Legislature is necessary for the protection of its citizens." (*Id.* at p. 704.) The government may impose restrictions upon the manner in which dogs are kept and may provide for their euthanization or other disposition. (*Simpson v. City of Los Angeles, supra*, 40 Cal.2d 271; 279.)

As the case law indicates the ownership of domestic animals is subject to reasonable government regulation. The Ordinance and its provisions fall squarely within the ambit of the City's police powers and derive from the City's authority to regulate matters of public health and safety. Thus, no federal or state constitutional liberties are implicated here.

## DISPOSITION

The judgment of the superior court is affirmed. Respondents are to recover their costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 13, 2011, S193751.