TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  | : |  |
|---|---|---|
| OPINION | : | No. 18-1001 |
| | : | |
| of | : | March 24, 2022 |
| | : | |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

_____

THE HONORABLE ROSILICIE OCHOA BOGH, STATE SENATOR, has requested an opinion on questions related to county animal shelters.

**QUESTIONS PRESENTED AND CONCLUSIONS**

1. May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia if, at the time of surrender, the owner checked a box on a form indicating that the dog was surrendered because it was vicious or dangerous?

Yes, a shelter may refuse to release a dog if the shelter has documentation that the dog is "vicious or dangerous" under Food and Agricultural Code section 31108.5(b). A form filled out by the owner constitutes "documentation" within the meaning of the Code.

2. May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia

if, at the time of surrender, the owner checked a box on a form indicating that the dog was surrendered because it had behavioral problems?

A shelter may refuse to release a dog if the shelter determines that the dog is not "adoptable" or "treatable" within the meaning of Food and Agricultural Code section 17005. A shelter may consider an owner's representation that a dog had behavioral problems, but the shelter must make an independent determination as to whether the dog is adoptable or treatable.

3. May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia if, at the time of surrender, the owner made no representation as to whether the dog was vicious or dangerous, or had behavioral problems?

A shelter may refuse to release a dog if the shelter determines that the dog is not "adoptable" or "treatable" within the meaning of Food and Agricultural Code section 17005.

## BACKGROUND

Throughout California, nonprofit animal rescue groups work to find suitable homes for stray and abandoned animals. Many such groups seek to rescue dogs from county animal shelters where dogs may be at risk of euthanasia. From time to time, shelters refuse to release certain dogs to rescue groups as an alternative to euthanasia.

Animal control is primarily a matter of local concern. "It is well settled that the licensing of dogs and the regulation of the manner in which they shall be kept and controlled are within the legitimate sphere of the police power, and that statutes and ordinances may provide for impounding dogs and for their destruction or other disposition."[1] The California Constitution empowers counties, as political subdivisions of the State, to make and enforce within their boundaries all ordinances and regulations not in conflict with State law.[2]

The State Legislature may and does weigh in on matters of animal control when such matters amount to a statewide concern. In particular, the State has long required counties to provide for the impounding of stray dogs and for the "killing in some humane

---

[1] *Simpson v. City of Los Angeles* (1953) 40 Cal.2d 271, 279; see also *Concerned Dog Owners of California v. City of Los Angeles* (2011) 194 Cal.App.4th 1219, 1234.

[2] Cal. Const., Art. XI, § 7.

manner or other disposition of any dog which is impounded."[3]  Around 1997, concerns arose about the excessive euthanasia of animals in county shelters.[4]  In 1998, the Legislature adopted legislation known as the Hayden Act aimed at reducing euthanasia in shelters.[5]  The statement of policy underlying that Act declared:

> (a) It is the policy of the state that no adoptable animal should be euthanized if it can be adopted into a suitable home.  Adoptable animals include only those animals eight weeks of age or older that, at or subsequent to the time the animal is impounded or otherwise taken into possession, have manifested no sign of a behavioral or temperamental defect that could pose a health or safety risk or otherwise make the animal unsuitable for placement as a pet, and have manifested no sign of disease, injury, or congenital or hereditary condition that adversely affects the health of the animal or that is likely to adversely affect the animal's health in the future.

> (b) It is the policy of the state that no treatable animal should be euthanized. A treatable animal shall include any animal that is not adoptable but that could become adoptable with reasonable efforts. This subdivision, by itself, shall not be the basis of liability for damages regarding euthanasia.[6]

In furtherance of the State's policy to reduce euthanasia, the Hayden Act requires animal shelters to hold both impounded stray dogs and owner-surrendered dogs for a minimum of four or six business days, depending on the shelter's hours of business.[7]  An impounded stray dog can be released only to its owner during the first three days; for the remainder of the holding period the dog must be available for either redemption or

---

[3] Food & Agr. Code, § 31105.

[4] See, e.g., Amy Collins, *Killing Man's Best Friend: Last year 139,000 unwanted pets in the L.A. area were destroyed; every day 70,000 puppies and kittens are born nationwide,* LA Daily News (Nov. 16, 1997), 1997 WLNR 1576715.

[5] Stats. 1998, ch. 752.

[6] Food & Agr. Code, § 17005.  The Hayden Act simultaneously enacted the exact same language in three separate codes.  Stats. 1998, ch. 752, §§ 5, 10, 20; see Civ. Code, § 1834.4; Food & Agr. Code, § 17005; Pen. Code, § 599d.

[7] Food & Agr. Code, § 31108, subd. (a) [impounded dogs], 31754, subd. (a) [owner-surrendered dogs].  Before 1998, the required holding period was 72 hours.  (See 1967 Agr. Code, § 31108; Stats. 1967, ch. 15.)

adoption.[8]  By contrast, owner-surrendered dogs are available for either owner redemption or adoption for the entire holding period.[9]

Another provision of the Hayden Act, Food and Agricultural Code section 31108(b)(1), also furthers the state policy in favor of adoptions.  Section 31108(b)(1) directs that if a stray dog is neither redeemed by its owner nor adopted within the statutory holding period, the dog must be released to a qualified nonprofit rescue group that requests it prior to euthanasia.[10]

Finally, Food and Agricultural Code section 31108.5 was enacted several years after the Hayden Act, and relates specifically to owner-surrendered dogs.[11]  The statute requires a person who surrenders a dog to a shelter to supply sufficient evidence that they are the owner of the dog, with the penalty of a $1,000 fine for providing false information.[12]  With ownership thus established, a surrendered dog "may be made available for immediate euthanasia if it has a history of vicious or dangerous behavior documented by the agency charged with enforcing state and local animal laws."[13]

## ANALYSIS

### Question 1

May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia if, at the time of surrender, the owner checked a box on a form indicating that the dog was surrendered because it was vicious or dangerous?

The question presumes that, at the time the dog is surrendered to the shelter, the owner will have an opportunity to supply information about the dog's history on a form. As a preliminary matter, we recognize that nothing in the Hayden Act requires an owner to make any representation about the temperament of a surrendered dog; state law requires only that an owner present identification and sign a statement of ownership upon

---

[8] Food & Agr. Code, § 31108, subd. (a)(2).

[9] Food & Agr. Code, § 31754, subd. (a).

[10] Food & Agr. Code, § 31108, subd. (b)(1).

[11] Stats. 2000, ch. 567, § 2; Food & Agr. Code, § 31108.5.

[12] Food & Agr. Code, § 31108.5, subd. (a).

[13] Food & Agr. Code, § 31108.5, subd. (b).

4

surrendering a dog.[14] But shelters are interested in knowing the histories of the dogs they receive, and our understanding is that they sometimes employ forms or questionnaires like the one hypothesized here, which calls for a surrendering owner to check a box if viciousness is the reason for surrender. In our view, the format of the written communication is immaterial; what matters for this question is that the dog's owner makes some representation in writing upon surrender that the dog is vicious or dangerous.

Food and Agricultural Code section 31108.5(b) states that a dog surrendered by its owner to a shelter "may be made available for immediate euthanasia if it has a history of vicious or dangerous behavior documented by the agency . . . ." We believe that this plain text answers the question presented in this scenario. When a dog's owner surrenders the dog, and submits a form indicating that the dog is vicious or dangerous, the shelter has documentation of vicious or dangerous behavior, as contemplated by section 31108.5(b). The statute authorizes "immediate euthanasia" in this circumstance, and the shelter may choose to euthanize the dog instead of releasing it to a rescue group.

The relevant legislative history confirms our understanding of this statutory scheme. The early version of what is now section 31108.5(b)—i.e., the exemption of vicious and dangerous dogs from the holding-period rules—would have allowed an owner to surrender a dog for immediate euthanasia without specifying any justification.[15] After a debate over what standard would allow for immediate euthanasia of an owner-surrendered animal, the Legislature settled on the "vicious or dangerous" standard: "Upon relinquishment, the dog may be made available for immediate euthanasia if it has a history of vicious or dangerous behavior documented by the agency charged with enforcing state and local animal laws."[16] The legislative record does not reflect any proposals to require shelters to independently verify an owner's representations. Far from it: a committee analysis specifically notes that this new rule would obviate the need

---

[14] Food & Agr. Code, § 31108.5, subd. (a).

[15] See Assem. Bill No. 2754 (1999-2000 Reg. Sess.) as amended April 6, 2000, § 1, p. 5 (proposing to add new subdivision to section 31108).

[16] Assem. Bill No. 2754, *supra,* as amended Aug. 7, 2000, pp. 5-6; see Sen. Judiciary Com., analysis of Assem. Bill No. 2754 (1999-2000 Reg. Sess.) as amended Aug. 7, 2000, p. 3 ("Any owner-relinquished dog that has a known history of vicious or dangerous behavior would be immediately available for euthanasia under this bill"); see Food & Agr. Code, § 31108.5, subd. (b).

for shelters to petition courts for declarations of dangerousness or viciousness.[17]  At the same time, the likelihood of owner misrepresentation or mistake was reduced by requiring people who surrender a dog to prove that they own the dog.[18]

Thus, both the plain text and legislative history of section 31108.5(b) support our conclusion that when an owner-surrendered dog has a recorded history of vicious or dangerous behavior, whether documented by way of a check-box form or other written representation, the county shelter has legal authority to euthanize the dog rather than releasing it to a rescue organization.

**Question 2**

May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia if, at the time of surrender, the owner checked a box on a form indicating that the dog was surrendered because it had behavioral problems?

This question differs from the previous one in that it posits that a dog has been surrendered because it has "behavioral problems," rather than because it is "vicious or dangerous."  "Behavioral problems" is a broad term that could refer to almost any behavior that an owner finds undesirable or unmanageable, ranging from relatively mild issues such as barking, scratching, whining, or jumping, to more severe problems such as threatening, attacking, injuring, or killing a human or another animal.  If, as in Question 1, a surrendering owner represents to a shelter in writing that the dog has a history of vicious or dangerous behavior, then that is all that the law requires for making the dog "available for immediate euthanasia" under section 31008.5(b).  But when the owner instead checks a box marked "behavioral problems" at the time of surrender, this does not suffice to document that a dog is "vicious or dangerous" under section 31008.5, and we look instead to other provisions of the Hayden Act to determine whether the shelter must release the dog to a rescue group upon request.

Food and Agricultural Code sections 31108(b)(1) and 31754(a), governing holding periods for dogs in shelters, provide that an impounded dog "shall, prior to the euthanasia

---

[17] See Sen. Judiciary Com., analysis of Assem. Bill No. 2754 (1999-2000 Reg. Sess.) as amended Aug. 7, 2000, at p. 8 (new provision would "circumvent the hearing necessary for an order to destroy an otherwise healthy vicious dog"); see generally Food & Agr. Code, §§ 31601-31626 (judicial process for declaration of vicious dog).

[18] Food. & Agr. Code, § 31108.5, subd. (a).

18-1001

of that animal, be released" to a rescue group if the group so requests.[19] The only exception on the face of these statutes is the one for ill and injured animals ("as provided in Section 17006"). A commenter has argued that the plain language of these provisions requires that every dog, surrendered or stray (other than the ill and injured), must be released to a rescue group upon request.

Is the "shall be released" language of Food and Agricultural Code sections 31108(b)(1) and 31754(a), strictly mandatory? It is true that the Code adopts the general rule that the word "shall" is mandatory and the word "may" is permissive.[20] But this general rule does not apply when a mandatory construction would undermine legislative intent, or lead to absurd results.[21]

This requires us to consider the Legislature's intentions for these specific provisions and the statutory scheme of which they are a part. On the surface, a rule requiring that every unclaimed dog must be released to a rescue organization prior to euthanasia would seem to serve the Hayden Act's leading purpose of reducing euthanasia. But when we look at the Hayden Act as a whole, we can see that the Act never promises to save every dog.[22] In fact, it only purports to save the "adoptable" and "treatable" ones.

Food and Agricultural Code section 17005 specifies that "[a]doptable animals include only those . . . that . . . have manifested no sign of a behavioral or temperamental defect that could pose a health or safety risk or otherwise make the animal unsuitable for placement as a pet."[23] And a treatable animal is one "that is not adoptable but that could

---

[19] Food & Agr. Code §§ 31108, subd. (b) (holding periods for stray dogs), 31754, subd. (a) (surrendered dogs "shall be held for the same holding periods, with the same requirements of care" as stray dogs).

[20] Food & Agr. Code, § 47 ("'Shall' is mandatory, and 'may' is permissive").

[21] See *In re A. V.* (2017) 11 Cal.App.5th 697, 710 (unless mandatory construction would be inconsistent with statute's purpose); *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 614 (unless context requires otherwise); see also *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194 (unless mandatory construction would imply an unreasonable legislative purpose); *Ovadia v. Abdullah* (1994) 24 Cal.App.4th 1100, 1109 (unless legislative history shows otherwise).

[22] *In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 (statutes are reviewed not in isolation but with reference to entire scheme so as to harmonize whole).

[23] Food & Agr. Code, § 17005; see Civ. Code, § 1834.4 (same); Pen. Code, § 599d (same).

become adoptable with reasonable efforts."[24]  What efforts are "reasonable" depends not only on the condition of the particular animal, but also on the circumstances and resources existing within the animal control system at the time.  The Hayden Act explicitly encourages cooperation between county animal shelters and nonprofit animal rescue organizations.[25]  These relationships give county shelters more flexibility and a broader network of resources, which in turn may influence a shelter's assessments as to what "reasonable effort" means—and, thus, which animals are "treatable."  But they do not give rescue organizations a right to adopt a dog that a shelter has deemed not adoptable and not treatable.

All of this leaves county animal shelters with discretion to evaluate impounded dogs, whether stray or surrendered, on a case-by-case basis for treatability and adoptability.  The statutory scheme is short on particulars as to how that evaluation is to be carried out or documented.  If, during the holding period, the shelter finds any "sign of a behavioral or temperamental defect that could pose a health or safety risk or otherwise make the animal unsuitable for placement as a pet," then the shelter may decline to surrender that dog to a rescue group, under the authority of Food and Agricultural Code section 17005.

For these reasons we conclude that, when an owner surrenders a dog and represents that it has behavioral problems, a county animal shelter may refuse to release the dog to a rescue group if the shelter determines that the dog is not adoptable or treatable within the meaning of Food and Agricultural Code section 17005.

## Question 3

May a county animal shelter refuse to release an owner-surrendered dog to a nonprofit rescue group that has requested that the dog be released to it prior to euthanasia if, at the time of surrender, the owner made no representation as to whether the dog was vicious or dangerous, or had behavioral problems?

The answer to Question 2 applies to Question 3, as well.  When an owner surrenders a dog and makes no representation as to whether it is dangerous or not, a county animal shelter may refuse to release the dog to a rescue group if the shelter determines that the dog is not adoptable or treatable within the meaning of Food and Agricultural Code section 17005.

---

[24] Food & Agr. Code, § 17005, subd. (b).

[25] Food & Agr. Code, § 31108, subd. (b).

18-1001

As a final note, some commenters have raised policy concerns about allowing a shelter to euthanize a dog when there is a volunteer organization willing to rescue the dog and save its life. And other commenters have noted that release of dangerous dogs poses a risk to public safety. People for the Ethical Treatment of Animals Foundation, for example, drew our attention to media reports of vicious and sometimes fatal attacks by dogs that were released from shelters to adopters and others.[26] PETA also noted that there is concern in Canada over an increase in dog attacks by aggressive dogs taken from California shelters and transported to that country.[27]

In the circumstances presented here, the Legislature is best equipped to balance the interests of people and animals raised by these comments. And it has done so in a nuanced statutory scheme that expresses a general policy preference against euthanasia but also gives county shelters the power to euthanize impounded animals under defined circumstances.

---

[26] Letter from People for the Ethical Treatment of Animals Foundation, Dec. 10, 2018.

[27] *Ibid*.

18-1001